**No.**

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## In re DYLANN STORM ROOF,
Appellant.

_____

## PETITION FOR WRIT OF MANDAMUS

_____

Jill E.M. HaLevi
Mediation and Legal Services
102 Broad Street, Suite C
Charleston, SC 29401
Phone: 843-819-0557
Email: jill@charlestonmediator.com

Angela S. Elleman
Chief, Capital § 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF THE CASE .................................................................................4

III. FACTS OF THE CASE .........................................................................................6

    A. Mr. Roof filed a motion to recuse Judge Gergel based on improper case assignment. .......................................................................................................6

    B. Judge Gergel denied the recusal motion less than 30 minutes after causing judge statements to be filed outside the adversarial process that dispute the factual basis for recusal. .....................................................................................9

    C. Mr. Roof moved for reconsideration based on the judge statements and Judge Gergel denied the motion without addressing the new concerns. ........................11

IV. ARGUMENT ........................................................................................................13

    A. The extraordinary circumstances here, where a judge engaged in his own fact-finding mission to respond to a motion for his recusal, warrant a writ of mandamus. ...........................................................................................................13

    B. Mr. Roof satisfies the first factor because he has no other adequate means to attain relief. .......................................................................................................15

    C. Mr. Roof satisfies the second factor because his right to issuance of the writ is clear and indisputable. ....................................................................................16

        1. Recusal under 28 U.S.C. § 455(a) ...........................................................17

        2. Recusal under 28 U.S.C. § 455(b)(1) .......................................................22

    D. Mr. Roof satisfies the third factor because relief is appropriate under these circumstances .................................................................................................24

V. CONCLUSION: Grounds for Mandamus are Satisfied ......................................25

CERTIFICATE OF COMPLIANCE ..........................................................................28

CERTIFICATE OF SERVICE ...................................................................................29

**Cases**

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004 .................................... 15, 27
*Cruz v. Abbate*, 812 F.2d 571 (9th Cir. 1987) ......................................................21
*Gregg v. Georgia*, 428 U.S. 153 (1976) ...............................................................27
*In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136 (6th Cir. 1990)................................15
*In re Al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019) ................................. 15, 16, 17, 27
*In re Beard*, 811 F.2d 818 (4th Cir. 1987) ...........................................................14
*In re Bulger*, 710 F.3d 42 (1st Cir. 2013) ..................................................... 14, 17
*In re Creech*, 119 F.4th 1114 (9th Cir. 2024) ......................................................14
*In re Hatcher*, 150 F.3d 631 (7th Cir. 1998).........................................................15
*In re Murchison*, 349 U.S. 133 (1955) .............................................................4, 19
*In re Rodgers*, 537 F.2d 1196 (4th Cir. 1976) ......................................................14
*In re Sch. Asbestos Litig.*, 977 F.2d 785 (3d Cir. 1992) ................................. 14, 17
*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)................. 23, 27
*Liteky v. United States*, 510 U.S. 540(1994) .................................................. 19, 25
*McClain v. Warden, Turbeville Corr. Inst.*, 805 F. App'x 221 (4th Cir. 2020) ........25
*McNeil v. Wisconsin*, 501 U.S. 171 (1991) .........................................................3, 24
*Nichols v. Alley*, 71 F.3d 347 (10th Cir. 1995) ............................................... 15, 17
*Perkins Coie LLP v. DOJ*, No. 25-716, 2025 U.S. Dist. LEXIS 56251 (D.C.C. Mar.
  26, 2025).........................................................................................................1
*Rice v. McKenzie*, 581 F.2d 1114 (4th Cir. 1978)...............................................3, 19
*Rippo v. Baker*, 580 U.S. 285 (2017) ...................................................................20
*See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986)................................... 19, 20
*Sinito v. United States*, 750 F.2d 512 (6th Cir. 1984)...........................................21
*State v. Simpson*, 551 So.2d 1303 (La. 1989) .......................................................21
*United States v. Pearson*, 203 F.3d 1243 (10th Cir. 2000) ..................................22
*United States v. Roof*, 10 F.4th 314 (4th Cir. 2021); *cert. denied*, 143 S. Ct. 303
  (2022)...............................................................................................................5
*Williams v. Pennsylvania*, 579 U.S. 14 (2016).....................................................20
*Withrow v. Larkin*, 421 U.S. 35 (1975) ................................................................20
*Woodson v. North Carolina*, 428 U.S. 280 (1976) ................................................21

**Statutes**

28 U.S.C. § 455 ............................................................................... passim

**Other Authorities**

Federal Judicial Center, *Ten Steps to Better Case Management* (2d ed. 2014).......22
H.R. Rep. No. 93-1453 (1974)...............................................................................19

United States Courts, *FAQs: Filing a Case* ............................................................22

**Constitutional Provisions**

U.S. Const. amend. VIII......................................................................................4

U.S. Const. amend. V .........................................................................................4

# I. INTRODUCTION

Dylann Roof petitions for a writ of mandamus ordering Judge Gergel to recuse himself from all further proceedings in this case, including deciding the pending § 2255 Motion and any related motions.[1] The § 2255 Motion involves questions of Judge Gergel's impartiality, currently and at the time of trial. High profile cases, as Mr. Roof's, are worthy of the same fairness and integrity as every other case. Indeed, as the Department of Justice itself has recently argued, "[f]air proceedings free from any suggestion of impartiality are essential to the integrity of our country's judiciary." *Perkins Coie LLP v. DOJ*, No. 25-716, 2025 U.S. Dist. LEXIS 56251, at *2-3 (D.C.C. Mar. 26, 2025) (alteration in original).

According to a sworn declaration of attorney Michael O'Connell, a member of the bar of South Carolina and the District of South Carolina, Judge Gergel made it known in 2015 that he wanted to preside over this case, and, because he wanted the case, another district judge "let him have it." Ex. 1 (O'Connell Dec.). This raises many questions, necessitating adversarial proceedings before an impartial tribunal. Mr. Roof filed a motion based on this declaration, seeking Judge Gergel's recusal.

Judge Gergel's response to this motion raises even deeper and more disturbing questions than the initial declaration that prompted Mr. Roof to seek

---

[1] Mr. Roof has been permitted to proceed *in forma pauperis* below. Thus, he should be permitted to proceed *in forma pauperis* before this Court pursuant to Fed. R. App. P. 24 (a)(3).

recusal. After Mr. Roof filed his motion seeking recusal or a hearing, two unsworn statements appeared on the docket. These statements were apparently intended to factually dispute Mr. O'Connell's sworn declaration, although they do not fully address the concerns raised by Mr. O'Connell's declaration.

The statements were not filed by any party, nor were they attached to any motion, response, order, or other document. The docket entry reflects that the statements were entered onto the docket by "ltap,":

| 04/04/2025 | 1051 | AFFIDAVIT of Judge Terry Wooten re 1049 MOTION for Recusal . (ltap, ) (Entered: 04/04/2025) |
| 04/04/2025 | 1052 | AFFIDAVIT of Judge David Norton re 1049 MOTION for Recusal . (ltap, ) (Entered: 04/04/2025) |

Ex. 2 (Docket from case below). The initials "ltap," appear to be the initials of Judge Gergel's Judicial Assistant, Lena Tapscott. *See* District of South Carolina, MDL No. 2873, Contact Information, https://www.scd.uscourts.gov/mdl-2873/contact.asp#usdcstaff (listing Judge Gergel's Judicial Assistant as Lena Tapscott). And, although the docket indicates that they were "affidavits" the documents themselves make clear that they were not submitted under penalty of perjury.

The logical inference, based on how they appear on the docket, is that Judge Gergel solicited these statements. However, their origin is not definitively known.

What is known is that shortly after the statements appeared on the docket, Judge Gergel issued an opinion denying the recusal motion, relying extensively on

the statements.[2] There has been no opportunity for adversarial testing of those two unsworn statements, despite the fact that they introduced factual disputes with the sworn declaration provided by Mr. Roof.

The question for this Court is "whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all of the circumstances." *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir. 1978). A judge asking to preside over a case would cause one to reasonably question his impartiality. Even more concerning, the district judge in this case apparently sought to resolve questions of his own possible appearance of impartiality by resolving a factual dispute without an adversarial process, undertaking an investigation and fact-gathering mission of his own. *McNeil v. Wisconsin*, 501 U.S. 171, 181, n.2 (1991) ("What makes a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties.").

Collectively and individually, Judge Gergel's actions in seeking to preside over the case and in investigating and gathering facts to use in denying the motion for recusal violate the constitutional requirements that a judge—especially one

---

[2] The Government did not respond to the recusal motion before Judge Gergel's order denying the motion, and the unsworn statements were not filed on the Government's behalf. Based on the ECF credentials, they were filed internally from within the court.

presiding over a capital prosecution—satisfy the appearance of impartiality. *See In re Murchison*, 349 U.S. 133, 136 (1955); *see also* U.S. Const. amends. V, VIII.

The issues there are thus twofold: First, there is evidence that Judge Gergel's impartiality could be doubted because he sought to preside over Mr. Roof's trial. Second, and more disturbing, Judge Gergel's response to a recusal motion based on evidence that he sought to preside over Mr. Roof's trial was to undertake his own fact-gathering mission, outside the presence of the parties and off the record, without even informing the parties. This is, of course, a wholly inappropriate way for a judge to resolve any motion, let alone a recusal motion. Accordingly, this Court should grant mandamus and order recusal. In the alternative, this Court should remand the issue of recusal for an evidentiary hearing on the factual disputes and a determination before an impartial judge.

## II. STATEMENT OF THE CASE

Mr. Roof was charged and convicted with the race-motivated shooting deaths of nine parishioners of the Emanuel African Methodist Episcopal Church in Charleston, South Carolina on June 17, 2015. He was prosecuted in the District of South Carolina under Hate Crime and Religious Obstruction laws. After proceeding *pro se* at much of the trial due to his trial counsel's ineffective manipulation and dishonesty with Mr. Roof, leading to a total breakdown in the attorney-client relationship, Mr. Roof's jury heard no mitigation and he was

sentenced to death. Through newly appointed counsel, Mr. Roof filed a direct appeal to the Fourth Circuit Court of Appeals. All members of the Fourth Circuit recused, so the Fourth Circuit decided this case on appeal through a panel of three judges comprised of Judge Duane Benton of the United States Court of Appeals for the Eighth Circuit, Judge Kent A. Jordan of the United States Court of Appeals for the Third Circuit, and Judge Ronald Lee Gilman, Senior Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation. The Fourth Circuit affirmed Mr. Roof's conviction and sentence, and the Supreme Court denied certiorari. *United States v. Roof*, 10 F.4th 314 (4th Cir. 2021); *cert. denied*, 143 S. Ct. 303 (2022).

On April 17, 2025, Mr. Roof filed a timely § 2255 Motion to Vacate, Set Aside or Correct his Sentence, raising 19 substantial claims of irregularities, errors, and ineffective assistance of counsel. The District Court has ordered that Mr. Roof file a corrected § 2255 Motion to Vacate, Set Aside or Correct his Sentence on or before July 21, 2025, enforcing the government's prior agreement to waive any statute of limitations defense for any § 2255 Motion filed on or before that date. The government's response is due 90 days later. Ex. 3, 4 (Orders below at Dkt. Nos. 1073 and 1074).

# III. FACTS OF THE CASE

## A. Mr. Roof filed a motion to recuse Judge Gergel based on improper case assignment.

Michael O'Connell informed undersigned counsel in March 2025 that in 2015—prior to the assignment of Mr. Roof's case to any District Judge—Judge Gergel made known in the Charleston division of the District of South Carolina that he wanted to preside over this case.[3]  Because of Judge Gergel's desire to preside over Mr. Roof's case, Judge Norton "let him have" the case. *Id.*

Michael O'Connell is a Charleston attorney who represented Mr. Roof along with lead counsel David Bruck from July 2015 to July 2016, at which time Mr. O'Connell withdrew from the case. Mr. O'Connell also happens to be a close friend of District Judge David Norton. Mr. O'Connell and Judge Norton had a telephone call during the summer of 2015 after Mr. Roof's crimes. Ex. 1 (O'Connell Dec.). The Charleston Church shooting garnered significant local and national news, so much so that then President Barack Obama delivered the eulogy for one of the victims to an audience of over six thousand attendees, broadcast world-wide live from the TD Arena in Charleston. *See* Alfred Turner, *Special Coverage: the Funeral of Sen. Clementa Pinckney*, South Carolina Public Radio (June 26, 2015), https://www.southcarolinapublicradio.org/2015-06-26/special-

---

[3] Michael O'Connell, Esq., provided this information to undersigned counsel and signed a sworn declaration attesting to his conversation with Judge Norton on March 20, 2025. Ex. 1 (O'Connell Dec.).

coverage-the-funeral-of-sen-clementa-pinckney; Kevin Sack & Gardiner Harris,

*President Obama Eulogizes Pastor as One Who Understood Grace*, New York

Times (June 26, 2015), https://www.nytimes.com/2015/06/27/us/thousands-gather-

for-funeral-of-clementa-pinckney-in-charleston.html. It can be no surprise that this

crime, which rocked the city of Charleston and the nation and reawakened the

depths of racial pain in this former hub of the international slave trade, would be a

topic of conversation among Judge Norton and Mr. O'Connell. Judge Norton asked

Mr. O'Connell if he was going to accept appointment as counsel for Mr. Roof. Mr.

O'Connell acknowledged that he did intend to accept appointment, and asked

which District Court Judge would get the case. Judge Norton responded to Mr.

O'Connell that Judge Gergel had indicated that he "really wants to" preside over

Mr. Roof's case. Ex. 1 (O'Connell Dec.) ¶ 6. Because of Judge Gergel's strong

desire to preside over Mr. Roof's case, Judge Norton "let him have" the case. Ex. 1

(O'Connell Dec.) ¶ 6. It is unknown what role Judge Norton might have had in

assigning or steering the case to Judge Gergel. He has since denied in an unsworn

statement that he had any formal role in that process. Ex. 5 (Norton Statement).

Based on this information, undersigned counsel sought to determine how

cases are assigned in the District of South Carolina and asked the Clerk for the

District of South Carolina for information. To date, the Clerk has been unable to

provide a written case assignment plan for the District.

Judge Gergel becoming the judge in Mr. Roof's case by letting other judges know he wanted the case raises serious and disturbing questions about Judge Gergel's ability to remain impartial and unbiased. And of course, depending on Judge Gergel's reasons for wanting the case, the improper assignment may be an indication of even deeper problems with the trial. The incident raises serious Due Process concerns.

Further, there are concerns that Judge Gergel did not appear unbiased at the time of trial. *See* Ex. 6 (Tr. 11/17/16 at 6); Ex. 7 (Tr 01/02/17 (Dkt. No. 989) at 15) (referring to the victims as "my victims"); Ex. 8 (Tr. 12/02/16 at 6) (referring to the defense as a "two headed monster"); Ex. 9 (Tr. 11/22/16 at 171) (rolling his eyes at the defense); Ex. 10 (Childs Dec.) ¶¶ 23-24 and Ex. 11 (Bruck Dec.) ¶ 12 (members of the defense team noting Judge Gergel's impatience and disdain expressed toward the defense).

Mr. Roof filed a Motion to Recuse in the District Court on March 26, 2025, that relied on 28 U.S.C. § 455 and relevant case law to argue that Judge Gergel should recuse himself from this case because there appears to be Due Process violations with this assignment that must be explored in § 2255 proceedings. Ex. 13 (Dkt. No. 1049). In the alternative, counsel asked for the assignment of another judge to determine the underlying merits of these factual allegations.

**B. Judge Gergel denied the recusal motion less than 30 minutes after causing Judges' statements to be filed outside the adversarial process that dispute the factual basis for recusal.**

Before the Government filed any response to the motion to recuse, on April 4, 2025, two statements—from the other two judges said to have been involved in the assignment of this case to Judge Gergel—appeared on the public docket. Ex. 5 (Norton Stmt.); Ex. 13 (Wooten Stmt.). The first statement, from then-Chief Judge and now-Senior United States District Judge Terry L. Wooten was dated April 1, 2025, and controverted facts alleged. Ex. 13. Judge Wooten stated that cases were assigned "at the discretion of and under my supervision," based on a judge's caseload and related cases. *Id*. Judge Wooten did not discuss whether he asked District Court Judge's about their caseloads and their capacity to take on a new large case. *Id*. While Judge Wooten indicated that Judge Gergel did not tell him he wanted the case, he does not recount any details about how the case was assigned to Judge Gergel and what caseload considerations may or may not have been taken into account. *Id.* Judge Wooten's statement did not refer to any written case assignment plan or the use of any computerized randomization or "wheel" to assign cases. *Id*.

The second statement, docketed one minute later, was from United Stated District Court Judge David C. Norton, dated April 3, 2025. Ex. 5 (Norton Stmnt.); Ex. 14 (ECF notification of Dkt. No. 1051); Ex. 15 (ECF notification of Dkt. No.

1052). Judge Norton's statement denied he had any direct role of the assignment of the Roof case to any judge, but he does not indicate what conversations among him and other district court judges may have informed such assignment. The unsworn statement does not discuss whether he shared his caseload with Judge Wooten or expressed his desire to not take the case. Ex. 5.

Both docket entries for the judges' statements appear to have been caused to be filed on the docket by Judge Gergel's judicial assistant; thus it appears that Judge Gergel directed the filing of these statements on the docket.

Neither statement was presented or tested through the adversarial process. Judge Norton's statement was filed as an unsworn "statement." The statement does not meet the requirements for declarations made under penalty of perjury pursuant to 28 U.S.C. § 1746. While Judge Wooten's statement is entitled "Affidavit," it is not notarized and thus does not meet the qualifications for an affidavit. It does say "I so swear," but it does not include the language that it is sworn under the penalty of perjury pursuant to 28 U.S.C. § 1746.

Twenty-three minutes after the judges' statements were docketed, Judge Gergel denied Mr. Roof's motion to recuse in a four-page opinion that quoted extensively from those statements. Ex. 16 (Dkt. No. 1053); Ex. 17 (ECF notification of Dkt. No. 1053). The quick turnaround from when the statements were docketed to when Judge Gergel issued his order suggest that Judge Gergel

had seen the statements before they were docketed. This further supports an inference that Judge Gergel was involved in obtaining these statements from his colleagues, creating the appearance of secret fact-gathering by Judge Gergel with no adversarial process.

Judge Gergel's order denying recusal made factual findings relying on Judge Norton's statement that Judge Gergel did not request assignment of the Roof case and Judge Wooten's statement that "he handled the assignment routinely, based on well established District of South Carolina practices." Ex. 16 (Dkt. No. 1053) at 3. Judge Gergel's fact-finding credited Judge Norton's recounting of his conversation with Mr. O'Connell over Mr. O'Connell's version of that conversation, crediting an unsworn statement that was not presented by one of the parties as part of the adversarial process. *Id.*

## C. Mr. Roof moved for reconsideration based on the judges' statements and Judge Gergel denied the motion without addressing the new concerns.

On April 8, 2025, Mr. Roof filed a motion for reconsideration and a second motion for recusal asking the district court to reconsider its denial of the motion to recuse in light of these new facts suggesting that the court made its decision outside the adversarial issues presented by the parties. Ex. 18 (Dkt. No. 1054). To put it bluntly, the District Judge whose recusal was at issue apparently sought and obtained unsworn statements from his judicial colleagues to rebut a declaration

submitted by the defense that called into question his ability to preside over the § 2255 proceedings. Then Judge Gergel relied on those statements to deny recusal, prior to even permitting the parties the opportunity to respond to, let alone confront, those statements.

Judge Gergel's fact gathering and fact finding undermine the appearance of impartiality. Further, Judge Gergel himself likely has knowledge about the facts underlying his own appointment to this case, which makes him a factual witness to this dispute. Despite new grounds having been raised in the second motion, Judge Gergel denied the renewed motion without addressing the circumstances by which his judicial assistant apparently caused statements defending Judge Gergel to be filed, instead finding that "no new material facts have emerged." Ex. 19 (Dkt. No. 1062) at 3. Judge Gergel did not address at all his own personal knowledge as a basis for his recusal under § 455(b)(1). There is a reasonable basis that a person, knowing all of these facts, would have concern about Judge Gergel's impartiality. For these reasons, he must be recused from consideration of the pending § 2255 motion. At the least, an evidentiary hearing before an impartial district court judge should occur to make determinations on these factual disputes in which Judge Gergel himself is a party.

## IV. ARGUMENT

**A. The extraordinary circumstances here, where a judge engaged in his own fact-finding mission to respond to a motion for his recusal, warrant a writ of mandamus.**

Courts have frequently issued writs of mandamus requiring recusal or a hearing on a judge's impartiality. A writ of mandamus is warranted here—a death penalty case where the stakes could not be higher.

"A district judge's refusal to disqualify himself can be reviewed in this circuit by way of a petition for a writ of mandamus." *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). Numerous courts, including this one, have issued a writ of mandamus in the context of judicial recusal. *See In re Rodgers*, 537 F.2d 1196, 1198 (4th Cir. 1976) (granting writ because judge disqualified under § 455); *In re Creech*, 119 F.4th 1114, 1126 (9th Cir. 2024) (concluding that "justice must satisfy the appearance of justice" in granting writ); *In re Bulger*, 710 F.3d 42, 49 (1st Cir. 2013) (issuing writ as it was "clear that a reasonable person might question the judge's ability to preserve impartiality"); *In re Sch. Asbestos Litig.*, 977 F.2d 764, 785 (3d Cir. 1992) (issuing writ because allowing judge to continue presiding meant "the outcome of this massive, important, and widely followed case would be shrouded with suspicion"); *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1146 (6th Cir. 1990) (issuing writ where judge disqualified under § 455); *In re Hatcher*, 150 F.3d 631, 638 (7th Cir. 1998) (same); *Nichols v. Alley*, 71 F.3d 347, 351-52 (10th Cir. 1995) (granting mandamus relief where a "reasonable person, knowing all the

13

relevant facts, would harbor doubts about the judge's impartiality"); *In re Al-Nashiri*, 921 F.3d 224, 241 (D.C. Cir. 2019) (considering "the need for an unimpeachable adjudicator" given "the seriousness of [the] alleged offenses and the gravity of the penalty they may carry" in granting writ).

Three conditions must be met for a writ of mandamus: (1) the petitioner must have "no other adequate means to attain the relief he desires," (2) the petitioner demonstrates his "right to issuance of the writ is clear and indisputable," and (3) mandamus relief is otherwise "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). The Supreme Court has been clear that while these conditions are "demanding," they "are not insuperable." *Id*. at 381. With these conditions met, a "clear abuse of discretion" justifies a writ of mandamus. *Id*. at 380.

As discussed below, Mr. Roof satisfies each of these factors. As to the first, courts frequently use mandamus to remedy orders improperly denying recusal motions. As to the second, Judge Gergel should recuse pursuant to § 455(a) and § 455(b)(1). As such, Mr. Roof's right to relief—Judge Gergel's recusal and reassignment of the case to an impartial judge, or at least a hearing with adversarial fact-finding governed by appropriate procedural guardrails, not a behind-the-scenes fact-finding mission wherein a judge finds facts relevant to his own supposed impartiality—is clear and indisputable. As to the third, mandamus relief

is appropriate under the circumstances, because Mr. Roof's right to relief is clear and mandamus is a remedy often used to ensure that cases are presided over by unbiased judges.

## B. Mr. Roof satisfies the first factor because he has no other adequate means to attain relief.

Mandamus, although an extraordinary remedy, is often used to address the refusal of a biased or potentially biased judge from recusing. Courts have determined that "when the relief sought is recusal of a disqualified judicial officer, the injury suffered by a party required to complete judicial proceedings overseen by that officer is by its nature irreparable." *In re Al-Nashiri*, 921 F.3d at 238 (alterations omitted). This is because "no amount of appellate review can remove completely the stain of judicial bias, both because it is too difficult to detect all of the ways that bias can influence a proceeding and because public confidence is irreparably dampened once a case is allowed to proceed before a judge who appears to be tainted." *Id*. (internal quotation marks and alterations omitted).

Accordingly, courts have determined that orders declining to recuse should be considered promptly by appellate courts, through mandamus, to prevent potentially biased judges from continuing to make substantial decisions in the case. *See, e.g.*, *In re Bulger*, 710 F.3d at 49; *In re Sch. Asbestos Litig.*, 977 F.2d at 784-85; *Nichols*, 71 F.3d at 352. In this case, the presiding judge will make substantial decisions regarding discovery and whether there should be an evidentiary hearing,

15

rule on procedural matters of great import, and, ultimately, make factual and legal determinations regarding the merits of the § 2255 itself. For Mr. Roof to have any meaningful opportunity for relief and for the outcome to be trustworthy, those decisions must be made by a judge who is unbiased, and appears unbiased. *See, e.g.*, *In re Al-Nashiri*, <u>921 F.3d at 238</u> (vacating all orders issued by biased judge).

## C. Mr. Roof satisfies the second factor because his right to issuance of the writ is clear and indisputable.

The second factor also weighs in favor of issuing the writ as Mr. Roof has demonstrated he has a "clear and indisputable" right to relief. Given that the brief litigation of Mr. Roof's motion to recuse has only resulted in new grounds for disqualification, it is "clear and indisputable" that recusal should be mandated. After receiving Mr. Roof's initial motion to recuse, rather than issue a deadline for the opposing party to file a response, hold a hearing or, at the very least, allow a disinterested court to assess the merits of the motion, Judge Gergel endeavored to go on his own fact-finding mission to discredit the sworn statement that supports the motion. Apparently satisfied with the statements that appear to be made at his direction, the Judge denied the motion without any input from the parties. This course of action was not only highly unusual, but it also complicated matters further. Judge Gergel's apparent independent questioning and investigation of potential witnesses has only further tainted the ability of the parties or any other court to resolve the matter of his recusal.

**1. Recusal under 28 U.S.C. § 455(a)**

Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States *shall* disqualify himself in any proceeding in which *his impartiality might reasonably be questioned*." 28 U.S.C. § 455(a) (emphasis added). This impartiality is "evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). "This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, if there is a reasonable factual basis for doubting the judge's impartiality, he should disqualify himself and let another judge preside over the case." H.R. Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355.

The question under § 455(a) is simply "whether another, not knowing whether the judge is actually impartial, might reasonably question his impartiality on the basis of all of the circumstances." *Rice v. McKenzie*, 581 F.2d 1114 (4th Cir. 1978). The Fifth Amendment requires not just actual impartiality but also the appearance of impartiality. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825 (1986). Indeed, "the Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best

way, justice must satisfy the appearance of justice.'" *Id.* (quoting *Murchison*, 349 U.S. at 136) (internal quotation marks omitted).

The Eighth Amendment applies this constitutional command with particular rigor to capital cases. *See, e.g., Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (in capital case, "the Due Process Clause may sometimes demand recusal even when a judge 'ha[s] no actual bias'" (quoting *Aetna*, 475 U.S. at 825) (alteration in original)); *Williams v. Pennsylvania*, 579 U.S. 1, 14 (2016) (judge's role as prosecutor in earlier stage of capital case "gave rise to an unacceptable risk of actual bias" that "so endangered the appearance of neutrality that his participation in the case 'must be forbidden if the guarantee of due process is to be adequately implemented'" (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975))).

Mr. Roof made credible allegations that Judge Gergel sought assignment to his case because he wanted the case and, as a result, another Judge "let him have it." Ex. 1. If this is true, at the very least it creates an appearance of impartiality. Most federal courts have procedures in place to ensure the random assignment of cases because of this very concern. The District of South Carolina apparently has no such written case assignment plan. A lack of any written assignment plan for random appointments of judges is ripe for abuse and manipulation, which is what appears to have happened here. Faced with allegations that he improperly conveyed his desire for the case, Judge Gergel enhanced that appearance of

impartiality when he apparently caused to be filed on the public docket statements from his own colleagues disputing the allegations in this case and attempting to defend the case assignment.

Mr. Roof—like any party appearing before a United States District Court— had at trial and has now the right to an impartial judge. Nowhere is the judge's impartiality more important than in a criminal case where the government is seeking the death penalty. "The selection of a judge to preside at a criminal trial is a matter of considerable significance to the criminal defendant." *Cruz v. Abbate*, 812 F.2d 571, 573 (9th Cir. 1987); *see also Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (explaining the heightened need "for reliability in the determination that death is the appropriate punishment in a specific case"). Thus, "[w]hile a defendant has no right to any particular procedure for the selection of the judge . . . he is entitled to have that decision made in a manner free from bias or the desire to influence the outcome of the proceedings." *Cruz*, 812 F.3d at 574.[4] Assigning a case to a particular judge "for an impermissible reason" is

---

[4] Assignment procedures appropriately allow courts to reassign cases to address practical problems, such as judges falling ill or to balance caseloads. *See, e.g.*, *Sinito v. United States*, 750 F.2d 512, 514 n.3 (6th Cir. 1984) (judges may trade cases so cases are heard in the most geographically convenient courthouse); *State v. Simpson*, 551 So.2d 1303, 1305 n.6 (La. 1989) (courts may reassign cases when a judge falls ill or is incapacitated); Federal Judicial Center, *Ten Steps to Better Case Management* 1 (2d ed. 2014) (noting that assignments for multidistrict litigation (MDL)—complex cases that consume enormous resources—are decided on by an MDL panel and require the consent of the assigned judge).

unequivocally prohibited. *Cruz*, 812 F.2d at 574. Such improper manipulation of case assignments "raises not only constitutional issues, but also significant questions regarding the fair administration of justice." *United States v. Pearson*, 203 F.3d 1243, 1255 (10th Cir. 2000).

A judge expressing that he "really wants to do" a case, and thus being given the case, is not a typical procedure for case assignment. Nor is it a fair or impartial one. Federal courts are required to have procedures in place to ensure unbiased case assignments: "By statute, the chief judge of each district court has the responsibility to enforce the court's rules and orders on case assignments. Each court has a written plan or system for assigning cases. The majority of courts use some variation of a random drawing."[5] Nothing could be further from following written procedures for randomly assigning cases than steering a high-profile case to a judge because he "really wants to do it" and makes this desire known to the other judges. Ex. 1 (O'Connell Dec.) ¶ 6.

To ensure judicial proceedings are free from bias—or even the possibility or appearance of bias—"[a]ny justice, judge, or magistrate judge of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). "The very

---

[5] United States Courts, *FAQs: Filing a Case*, https://www.uscourts.gov/faqs-filing-a-case#:~:text=The%20majority%20of%20courts%20use,related%20cases%2C%20or%20prisoner%20cases.

purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988).

In light of Judge Gergel's unexplained desire to preside over Mr. Roof's trial, his impartiality at trial could reasonably be questioned. Certainly, no judge could be impartial in § 2255 proceedings involving the legal issue of his own impartiality at trial. Therefore, Judge Gergel must be recused from the § 2255 proceedings.

The additional factual information that Judge Gergel apparently caused statements to be filed defending the assignment, possibly as a result of his own investigation and fact-gathering, further demands recusal. Specifically, rather than permitting the adversarial process to occur, or requesting the assignment of a neutral District Judge to fact-find, it appears that the District Court took it upon itself to defend what happened here. Then, the District Court Judge quickly relied on the statements he caused to be filed on the public docket to make findings of fact, without giving the parties an opportunity to respond to, let alone confront, those statements.

This lack of an adversarial process for fact-finding violates Mr. Roof's Due Process rights under the Fifth Amendment and provides a sufficient basis for granting a Writ of Mandamus ordering recusal of the District Court Judge. In the

alternative, a hearing should be held by a neutral judge to consider the disputed facts.

Recusal motions are always sensitive to file and to decide. Here, rather than acting with the transparency and respect for the adversarial process required in such situations, the assigned District Judge appears to have undertaken an investigation and fact-gathering mission of his own to counter the factual allegations raised in the recusal motion. *McNeil*, 501 at 181, n.2 ("What makes a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties."). Judge Gergel should be recused.

## 2. Recusal under 28 U.S.C. § 455(b)(1)

Judge Gergel should be recused from this case based on his personal knowledge of the factual dispute at issue. 28 U.S.C. § 455(b)(1) states that a judge "shall also disqualify himself in the following circumstances: (1) [w]here he has a personal bias or prejudice concerning a party, or *personal knowledge of disputed evidentiary facts* concerning the proceeding." (emphasis added). Such knowledge must stem from "a source outside the judicial proceeding at hand" in order to disqualify a judge. *Liteky*, 510 U.S. at 545; *McClain v. Warden, Turbeville Corr. Inst.*, 805 F. App'x 221 (4th Cir. 2020).

Judge Gergel has extra-judicial knowledge as to the conversations among himself, Judge Norton and Judge Wooten in 2015 regarding the assignment of this case. Because allegations suggest 2015 conversations caused the case to be assigned to Judge Gergel because he "really wanted" the case, Ex. 1, and he would have personal knowledge of these facts, he cannot be the arbiter of this matter. This is twofold: Judge Gergel's personal knowledge makes him disqualified from both the question of his recusal and from the underlying § 2255 Motion pending in his Court. Because the question of whether Judge Gergel was improperly assigned the case in 2015 also is a substantive claim raised in Mr. Roof's § 2255 Motion to Vacate, Judge Gergel also cannot be the arbiter of the § 2255 motion.

Judge Gergel has extra-judicial knowledge with respect to the basis of the initial recusal motion— *i.e.,* how the assignment of the case came about, the core disputed fact. This personal knowledge, and thus, appearance of partiality, has only increased through his gathering of judicial declarations and *sub rosa* factfinding that led to the denial of the initial motion.

Attorney Michael O'Connell swore in a signed statement that Judge Norton said to him that Judge Gergel "really wants" the case and thus Judge Norton "let him have" it. Ex. 1 (O'Connell Dec.) Judge Gergel appears to have caused to be filed statements that dispute that Judge Gergel was granted this case based on any specific request for the case. *See* Ex. 13; Ex. 5. The assignment plan described by

Judge Wooten contains significant ambiguity and possibility for abuse. Judge

Wooten's statement indicates that while he was Chief Judge he used his discretion

to assign cases based on caseloads and related cases. Ex. 13. Judge Wooten does

not describe the use of a wheel or a neutral system that cannot be manipulated

either intentionally or with unintentional bias. And, of course, Judge Gergel would

have personal knowledge of the factual dispute that exists among the sworn

declaration of Michael O'Connell and the statements of Judges Wooten and

Norton. Judge Gergel then relied on the unsworn statements of two Judges

presented outside of any adversarial process, further making himself a witness to

the proceedings below. Since Judge Gergel has personal knowledge of the facts

underlying this dispute, he is required to recuse. See 28 U.S.C. § 455 (b)(1) ("he

*shall* . . . disqualify himself.").

## D. Mr. Roof satisfies the third factor because relief is appropriate under these circumstances.

Lastly, mandamus relief in this matter is "appropriate under the

circumstances." *In re Al-Nashiri*, 921 F.3d at 239 (quoting *Cheney*, 542 U.S. at

381). Certainly, it cannot be overstated that this is a case where the government is

seeking the *ultimate penalty* against Mr. Roof. Because "death is different," *Ford

v. Wainwright*, 477 U.S. 399, 411 (1986), "'the [Supreme] Court has been

particularly sensitive to ensure that every safeguard is observed.'" *In re Al-Nashiri*,

921 F.3d at 239 (alteration in original) (quoting *Gregg v. Georgia*, 428 U.S. 153,

187 (1976)). "In no proceeding is the need for an impartial judge more acute than one that may end in death." *In re Al-Nashiri*, <u>921 F.3d at 239</u>. Additionally, issuing the writ here "may prevent a substantive injustice in . . . future case[s] by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered. *Liljeberg*, <u>486 U.S. at 868</u>. Finally, the assigned District Judge's refusal to give meaningful consideration to the recusal motion and his decision to instead engage in a secret investigation of potential witnesses is an extraordinary breach of the adversarial process, making mandamus relief more than appropriate.

## V. CONCLUSION: Grounds for Mandamus are Satisfied

Mr. Roof has shown that it is "clear that a reasonable person might question Judge [Gergel's] ability to remain impartial in hearing the case[.]" *Bulger*, <u>710 F. 3d at 46</u>. He has also satisfied the other requisites for mandamus. As for irreparable harm, "we can leave aside any question of harm personal to the defendant and concentrate on damage to the judicial system," which makes it "imperative to act promptly to preclude any reasonable question" as to "the fairness of the judicial branch." *Id.* at 49.

This Court should issue Mandamus in order to ensure confidence in our judiciary and the resolution of the claims in this case with no appearance of

partiality. A case like this one, which remains under scrutiny of the victims and the public, demands no less.

In addition, the equities, as well as judicial economy, favor immediate review. The gravity of the concerns raised "take this case out the category of the heckler's veto." *Id.* Mr. Roof is not merely seeking delay. At the first opportunity after learning of facts suggesting impropriety in the assignment of this case, Mr. Roof developed the factual basis by obtaining a sworn declaration from Mr. O'Connell and filing a Motion to Recuse.[6] If this Court does not exercise Mandamus, the allegations and concerns in this matter will only fester, and a cloud of doubt regarding impartiality will continue to hover over this case. If this Court defers review, then later concludes that recusal was warranted, a remand for another round of post-trial proceedings could be necessary.

---

[6] While Mr. O'Connell did represent Mr. Roof while in a pre-trial posture, he did not reveal this information to Mr. Roof, who proceeded *pro se* during most of his trial. Mr. Roof had no personal knowledge of any allegations of irregularities in Judge Gergel's assignment of this case until March 2025 when Mr. O'Connell finally revealed this information to Mr. Roof's § 2255 counsel. The § 2255 motion raises Mr. O'Connell's ineffectiveness for his failure to address this issue at the time.

This Court should grant mandamus and order recusal. Should this Court find that further factual development is necessary based on the factual disputes that developed in the proceedings below, this Court should remand the recusal matter to the district court before an impartial judge for an evidentiary hearing.

Dated: May 5, 2025

Respectfully submitted,

/s/ Jill E.M. HaLevi
Jill E.M. HaLevi
Mediation and Legal Services
102 Broad Street, Suite C
Charleston, SC 29401
Phone: 843-819-0557
E-Mail: jill@charlestonmediator.com

/s/ Angela S. Elleman
Angela S. Elleman
Chief, § 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limit of Fed. R. App. P. 21(d)(l) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this petition contains 6,429 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font in Times New Roman type style.

Dated: May 5, 2025

/s/ Jill E.M. HaLevi

/s/ Angela S. Elleman
Attorneys for Defendant-Appellant
**Dylann Storm Roof**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2025, I served copies of the foregoing

document and attached exhibits by United States Postal Service and email on

counsel for the government, Christopher Schoen (christopher.schoen@usdoj.gov),

and on the district court, Hon. Richard Mark Gergel, via Courtroom Deputy

Crystal Perry (crystal_perry@scd.uscourts.gov).


Dated: May 5, 2025

                                     /s/ Jill E.M. HaLevi

                                     /s/ Angela S. Elleman
                                     Attorneys for Defendant-Appellant
                                     Dylann Storm Roof