# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

## IN RE: DYLANN STORM ROOF,
*Petitioner.*

## ON PETITION FOR A WRIT OF MANADAMUS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA

## UNITED STATES' RESPONSE TO THE PETITION FOR WRIT OF MANDAMUS

BRYAN P. STIRLING
UNITED STATES ATTORNEY

CHRISTOPHER B. SCHOEN
ASSISTANT U.S. ATTORNEY
55 BEATTIE PLACE, SUITE 700
GREENVILLE, SC 29601
TEL.:　　　(864) 282-2100
EMAIL: Christopher.Schoen@usdoj.gov

KATHLEEN M. STOUGHTON
ASSISTANT U.S. ATTORNEY
1441 MAIN STREET, SUITE 500
COLUMBIA, SOUTH CAROLINA 29201
TEL.:(803) 929-3114
EMAIL: Kathleen.Stoughton@usdoj.gov

*ATTORNEYS FOR RESPONDENT*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES..................................................................................iii

INTRODUCTION ..........................................................................................1

BACKGROUND ............................................................................................2

STANDARD OF REVIEW..............................................................................7

ARGUMENT................................................................................................9

    1.  Petitioner has no clear and indisputable right to the requested relief. .....9

        a.  Petitioner's claims are untimely..............................................10
        b.  Mr. O'Connell's statement does not provide a basis to reasonably doubt Judge Gergel's impartiality...........................................12
        c.  Judge Gergel reasonably relied on Judge Norton's and Judge Wooten's statements in resolving the motion. .........................17
        d.  Petitioner's other evidence fails to show bias. .........................24

    2.  Petitioner cannot show that he has no other means available to obtain relief..................................................................................28

    3.  Petitioner has not shown that a writ of mandamus is appropriate under the circumstances. ......................................................................29

CONCLUSION.............................................................................................32

CERTIFICATE OF COMPLIANCE .............................................................33

# TABLE OF AUTHORITIES

**Case**                                                            **Page(s)**

*Allen v. United States*,
No. 4:07CV0027 ERW, 2008 WL 2754804 (E.D. Mo. July 11, 2008)............30

*Allied Chem. Corp. v. Daiflon, Inc.*,
449 U.S. 33 (1980).................................................................................8

*Balkany v. United States*,
751 F. App'x 104 (2d Cir. 2018) ...........................................................11

*Bankers Life & Cas. Co. v. Holland*,
346 U.S. 379 (1953)..............................................................................28

*Belue v. Leventhal*,
640 F.3d 567 (4th Cir. 2011) ...........................................8, 9, 25, 27

*Blackledge v. Allison*,
431 U.S. 63 (1977)................................................................................31

*Cheney v. U.S. Dist. Ct. for D.C.*,
541 U.S. 913 (2004)..............................................................................18

*Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*,
816 F.3d 48 (4th Cir. 2016)....................................................................7

*Duckworth v. Dep't of Navy*,
974 F.2d 1140 (9th Cir. 1992)..............................................................20

*Gabrion v. United States*,
No. 1:15-CV-447, 2018 WL 4786310 (W.D. Mich. Oct. 4, 2018)............ 30, 31

*Hinman v. Rogers*,
831 F.2d 937 (10th Cir. 1987)..............................................................17

*Hodgson v. Liquor Salesmen's Union Local No. 2*,
444 F.2d 1344 (2d Cir. 1971) ...............................................................13

*Idaho v. Freeman*,
507 F. Supp. 706 (D. Id. 1981) .............................................................17

*In re Beard*,
811 F.2d 818 (4th Cir. 1987) ................................................................10

*In re Brooks*,
383 F.3d 1036 (D.C. Cir. 2004) ............................................................22

*In re Bulger*,
710 F.3d 42 (1st Cir. 2013) ...............................................................9, 32

*In re Cabezas*,
No. 22-14054-A, 2023 WL 6784344 (11th Cir. Mar. 1, 2023)......................28

*In re Catawba Indian Tribe of S.C.*,
973 F.2d 1133 (4th Cir. 1992)......................................................7, 8, 29

*In re Drexel Burnham Lambert Inc.*,
861 F.2d 1307 (2d Cir. 1988) ...........................................................8, 22

*In re Martinez-Catala*,
129 F.3d 213 (1st Cir. 1997)...................................................................17

*In re Moore*,
955 F.3d 384 (4th Cir. 2020) ...........................................................9, 28

*In re Murphy-Brown, LLC*,
907 F.3d 788 (4th Cir. 2018) ...................................................................7

*In re U.S.*,
572 F.3d 301 (7th Cir. 2009) ...................................................................9

*Johnson v. Lumpkin*,
74 F.4th 334 (5th Cir. 2023); *cert denied,* 144 S. Ct. 829 (2024) ..............21, 28

*Kerr v. U.S. Dist. Court for the N. Dist. of Cal.*,
426 U.S. 394 (1976)............................................................................7, 29

*Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*,
748 F.3d 160 (4th Cir. 2014) .................................................................10

*Liteky v. United States*,
510 U.S. 540 (1994)..................................................................................27

*Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*,
872 F. Supp. 1346 (E.D. Pa. 1994)...........................................................19

*Microsoft Corp. v. United States*,
530 U.S. 1301 (2000).................................................................................8

*Nelson v. United States*,
297 F. App'x 563 (8th Cir. 2008) .............................................................30

*Preston v. CitiMortgage*,
522 Fed. Appx. 426 (10th Cir. 2013)........................................................25

*Rhines v. Weber*,
544 U.S. 269 (2005)..................................................................................30

*Rose v. Bauman*,
No. 15-11963, 2021 WL 508426 (E.D. Mich. Feb. 11, 2021)........................18

*Schwartz v. Steven Kramer & Assocs.*,
No. CIV.A. 90-4943, 1995 WL 301363 (E.D. Pa. May 12, 1995)...................19

*Singh v. Garland*,
20 F.4th 1049 (5th Cir. 2021).................................................................24

*Snarr v. United States*,
No. 1:13-CV-724, 2023 WL 4237095 (E.D. Tex. June 28, 2023) ...................30

*Umana v. United States*,
No. 3:16-cv-00057-RJC, 2018 WL 1511737 (W.D.N.C. March 27, 2018).......30

*United States v. Balistrieri*,
 779 F.2d 1191 (7th Cir. 1985)..................................................................17
*United States v. Cherry*,
 330 F.3d 658 (4th Cir. 2003) ..................................................... 8, 15, 17
*United States v. Collier*,
 932 F.3d 1067 (8th Cir. 2019)..................................................................25
*United States v. DeTemple*,
 162 F.3d 279 (4th Cir. 1998) ..................................................... 8, 20, 21
*United States v. Guglielmi*,
 615 F. Supp. 1506 (W.D.N.C. 1985).......................................................25
*United States v. Nixon*,
 267 F. Supp. 3d 140, 148 (D.D.C. 2017).................................................19
*United States v. Owens*,
 902 F.2d 1154 (4th Cir. 1990).......................................................10, 11, 12
*United States v. Perkins*,
 787 F.3d 1329 (11th Cir. 2015)................................................................25
*United States v. Robbins*,
 197 F.3d 829 (7th Cir. 1999)...................................................................24
*United States v. Roof*
 No. 2:15-CR-00472-RMG (D.S.C. July 22, 2015)..................................28
*United States v. Roof*,
 10 F.4th 314 (4th Cir. 2021)..................................................................2, 3
*United States v. Whorley*,
 550 F.3d 326 (4th Cir. 2008) ...................................................................11
*Vreeland v. Huss*,
 No. 18-CV-00303-PAB-SKC, 2020 WL 4582719 (D. Colo. Aug. 10, 2020)....13

## Statutes

28 U.S.C. § 144................................................................................. 10, 13
28 U.S.C. § 455..........................................................................................13
28 U.S.C. § 455(a) ................................................................................ passim
28 U.S.C. § 455(b)(1)................................................................................19
28 U.S.C. § 2255 ....................................................................1, 3, 28, 30

# INTRODUCTION

Petitioner Dylann Storm Roof was sentenced to death by a jury for a racially motivated massacre at Mother Emanuel Church in 2015. He now petitions for mandamus seeking to recuse the district judge who presided over his jury trial from considering his recently filed motion to vacate his conviction and sentence under 28 U.S.C. § 2255. The motion calls for a "doubly deferential review," as Petitioner seeks drastic relief (recusal) through an extraordinary remedy (mandamus). Yet his motion rests on the flimsiest of grounds—a hearsay statement attributed to a different district judge indicating the presiding judge "really wanted" the case. Although Petitioner's attorney was aware of this statement before Petitioner was federally charged, he not only failed to move for recusal but sought to allow this very judge to determine guilt or innocence and the appropriate sentence.

Now, almost ten years later, having been convicted and sentenced to death by a jury and having failed to overturn his sentence on appeal or to obtain clemency, Petitioner seeks to delay this matter by preventing the trial judge, who has extensive knowledge of the case, from adjudicating his motion under § 2255. The motion to recuse is untimely and is based on hearsay that fails to establish bias even if it were accepted as true. Petitioner fails to show that he lacks other means to obtain relief, as his arguments rehash a claim he advances in his § 2255 motion and presumably

1

will seek to raise on appeal should it fail. Petitioner has not shown that a writ of mandamus is appropriate here, and his petition should be denied.

### BACKGROUND

Petitioner Dylann Storm Roof, a self-proclaimed white supremacist, murdered nine African Americans during a Bible study at Mother Emanuel Church in 2015. *United States v. Roof*, 10 F.4th 314, 332 (4th Cir. 2021). After joining the churchgoers for 45 minutes of prayer, he opened fire, killing nine of the parishioners and leaving three survivors. *Id*. Roof was arrested the following day and confessed to the crime during an FBI interview in which he explained that he was motivated by a desire to start a race war in the United States. He was charged with multiple federal hate crimes and firearm offenses, and the Government elected to seek the death penalty. *Id*. at 332-33.

The District Court appointed a team of defense attorneys to represent Petitioner, led by David Bruck, a defense attorney with considerable experience in high-profile capital cases. *Id*. at 333. During the course of their pretrial investigation, the defense team decided to pursue a mental health defense based on the claim that Petitioner had autism. *Id*. at 334-35. Upon learning of counsel's intention, Petitioner vehemently objected and successfully invoked his right to self-representation. *Id*. at 348-49. Although he later allowed his attorneys, who were acting in a standby capacity, to assist with parts of the jury selection process and to represent him during

2

the guilt phase of the trial, he reasserted his right to self-representation for the sentencing phase. *Id.* at 349-50. The trial commenced on December 7, 2016, and the jury rendered a guilty verdict on all charges on December 15, 2016. The sentencing phase of the trial began January 4, 2017, and on January 10, 2017, the jury recommended a sentence of death on all eligible counts.

Petitioner appealed his conviction and sentence to this Court, which affirmed the decision. *Id.* at 331. The United States Supreme Court denied his petition for writ of certiorari on October 11, 2022. His deadline to file a motion to vacate his sentence under 28 U.S.C. § 2255 was initially set for October 11, 2023, but the Government agreed to multiple extensions of the deadline.

On April 17, 2025, Petitioner moved to vacate his conviction and sentence under 28 U.S.C. § 2255. *See* Pet. Ex. 2. The district court granted Petitioner leave to file an amended motion to vacate under 28 U.S.C. 2255 up until July 21, 2025. *See* Pet. at 5. On March 26, 2025, shortly before filing his motion to vacate, Petitioner moved to recuse District Judge Richard M. Gergel, who has presided over this case since July 23, 2015, the day after it was indicted. Petitioner's motion explained that his counsel had "recently learned" that when the Government initiated the case against Petitioner, Judge Gergel had "made known among judges that he wanted to preside over the case." Pet. Ex. 12 at 1. Petitioner contends that Judge Gergel's alleged desire to preside over the case "raises serious and disturbing questions about

[his] ability to remain impartial and unbiased." *Id.* at 2. Accordingly, Petitioner argued that Judge Gergel's recusal was required under the due process clause and 28 U.S.C. § 455(a).

In support of his motion, Petitioner attached a short single-page declaration of one of his former attorneys, Michael P. O'Connell. *See* Pet. Ex. 1. Mr. O'Connell is a Charleston attorney who was classmates with lead defense counsel David Bruck, and who agreed during the summer of 2015 to help Mr. Bruck represent Petitioner. *Id.* Mr. O'Connell later withdrew from the representation.[1] *Id.* In his declaration, Mr. O'Connell claims that after he agreed to serve as co-counsel for Petitioner, he had a telephone conversation with District Judge David Norton, who had also been a law school classmate. *Id.* Mr. O'Connell claims that he asked Judge Norton "what judge was getting the Roof case," and was told, "Gergel really wants to do it, so I'm going to let him have it." *Id.* Mr. O'Connell's declaration does not identify the basis for Judge Norton's alleged belief that Judge Gergel wanted to preside over the case, nor does it contain any claim that Judge Gergel had spoken with Judge Norton about the matter. Mr. O'Connell indicates that he thinks he told his wife about his conversation with Judge Norton but does not "recall sharing it with anyone else until [March of

---

[1] Mr. O'Connell's Declaration claims that he "withdrew from the case in the Spring of 2016," but the docket reflects that he was not terminated from the case until July 22, 2016, and he continued to file documents on Petitioner's behalf until at least July 14, 2016, *see* Trial Court Docket, attached as Exhibit 1, at 20, Dkt. Entry 252.

4

2025]." *Id*. Mr. O'Connell's declaration does not indicate that Mr. O'Connell believed then or now—that Judge Gergel was biased against Petitioner or that there was any basis to request that Judge Gergel recuse himself from the case.

On April 4, 2025, Judge Gergel entered an order denying Petitioner's motion to recuse. Pet. Ex. 16. Additionally, Senior District Judge Terry L. Wooten and District Judge David C. Norton filed statements responding to Petitioner's allegations, Pet. Exs. 5, 13, which Judge Gergel referenced in his order denying Petitioner's motion to recuse. Judge Wooten's statement is entitled "Affidavit of Senior United States District Judge Terry L. Wooten." Pet. Ex. 13. It does not bear the caption of the case, it concludes with the statement "I SO SWEAR," and it bears Judge Wooten's signature. Judge Norton's statement is styled like a judicial order. Pet. Ex. 5. It bears the heading used for all District of South Carolina judicial documents and the case caption, and it is signed and dated in the same style as a D.S.C. judicial order. *Id*.

Judge Wooten's affidavit explained that he "was the Chief Judge for the District of South Carolina when charges were brought against Dylann Roof," and that he was responsible for assigning cases, including the Roof case, which he did "based on the caseloads that each district judge carried" and "related cases." Pet. Ex. 13 at 1. Judge Wooten attests that this process was followed in the Roof case, and that he assigned the case to Judge Gergel "in light of those criteria." *Id*. Judge

Wooten explained, "At no time did Judge Gergel request of me that Roof's case be assigned to him." *Id.* "He had no role in the assignment of the Roof case." *Id.* "No other judge had any role in the assignment of the Roof case other than me, acting in my role as Chief Judge." *Id.* Finally, he stated, "Any assertion that Judge Gergel sought assignment of the Dylann Roof case to himself is not accurate nor a credible assertion. No information has been provided to me to support that contention." *Id.*

In his statement, Judge Norton explained, "I never had *United States v. Roof* assigned to me. I played no role in the assignment of the case to Judge Gergel. I am unaware of any effort by Judge Gergel to have the case assigned to him." Pet. Ex. 5 at 1. Judge Norton further stated, "I was not involved in any way in the assignment of the *Roof* case to Judge Gergel. I did not communicate with Chief Judge Wooten or Judge Gergel prior to the assignment of the case and am aware of no facts indicating that this assignment was not handled routinely by Chief Judge Wooten." *Id.* at 2. Judge Norton concluded, "This is the first occasion in the nearly ten years since the *Roof* case was assigned to Judge Gergel that I have been aware of any claim that I played any role in steering the *Roof* case assignment to Judge Gergel. This did not happen. Anyone who reached the conclusion that I played a role in the assignment of the *Roof* case to Judge Gergel based on a conversation with me misunderstood our discussion." *Id.*

After his motion to recuse was denied, Petitioner filed a motion to reconsider on April 8, 2025, Pet. Ex. 18, which the district court denied in a written order on April 18, 2025. Pet. Ex. 19. Petitioner's motion to vacate or set aside his conviction and sentence, which was filed on April 26, 2025, incorporates Petitioner's recusal argument as one of its grounds and further argues that Mr. O'Connell provided ineffective assistance of counsel based on his failure to move for Judge Gergel to be recused in light of his alleged conversation with Judge Norton. Pet. at 26 n.6. On May 5, 2025, Petitioner filed the instant Petition for a Writ of Mandamus. On June 25, 2025, this Court directed the Government to file a response to the Petition for Writ of Mandamus.

**STANDARD OF REVIEW**

"Mandamus is a 'drastic' remedy that must be reserved for 'extraordinary situations' involving the performance of official acts or duties." *Cumberland Cnty. Hosp. Sys., Inc. v. Burwell*, 816 F.3d 48, 52 (4th Cir. 2016) (quoting *Kerr v. U.S. Dist. Court for the N. Dist. of Cal.,* 426 U.S. 394, 402 (1976)). "Mandamus should not be used as a substitute for appeal." *In re Catawba Indian Tribe of S.C.*, 973 F.2d 1133, 1136 (4th Cir. 1992). "Courts provide mandamus relief only when (1) petitioner has no other adequate means to attain the relief it desires; (2) petitioner has shown a clear and indisputable right to the requested relief; and (3) the court deems the writ appropriate under the circumstances." *In re Murphy-Brown, LLC,*

7

907 F.3d 788, 795 (4th Cir. 2018) (cleaned up). "When mandamus is sought to compel an act normally committed to the discretion of the district court, the petitioner faces an even more rigorous standard. Before the writ should issue in a case in which the matter at hand is entrusted to the discretion of the district court, the district court's abuse of discretion must amount to a 'judicial usurpation of power.'" *In re Catawba Indian Tribe of S.C.*, 973 F.2d at 1136 (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980)). "Discretion is confided in the district judge in the first instance to determine whether to disqualify himself…." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

Recusal of the presiding judge is also a "drastic remedy." *Belue v. Leventhal*, 640 F.3d 567, 575 (4th Cir. 2011). "A presiding judge is not … required to recuse himself simply because of unsupported, irrational or highly tenuous speculation," rather "the proper test … is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality." *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003) (quotation marks and citations omitted). "This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000). "[A] reasonable outside observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased." *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998).

"[W]hile recusal motions serve as an important safeguard against truly egregious conduct, they cannot become a form of brushback pitch for litigants to hurl at judges who do not rule in their favor." *Belue*, 640 F.3d at 574 (cleaned up). As the Seventh Circuit has observed, "needless recusals exact a significant toll" as "a change of umpire mid-contest may require a great deal of work to be re-done and facilitate judge-shopping." *In re U.S.*, 572 F.3d 301, 308 (7th Cir. 2009).

A litigant who seeks to compel recusal of a district judge through a mandamus petition faces a heavy burden to overcome the combination of the high bar for mandamus and the demanding standard for recusal. "Applying the mandamus rule to the substantive recusal standard thus requires a doubly deferential review: relief for the defendant is only warranted if it is clear and indisputable that no reasonable reading of the record supports a refusal to recuse." *In re Bulger*, 710 F.3d 42, 45–46 (1st Cir. 2013) (cleaned up). "This standard is difficult to meet, and rightly so." *Id.* Consequently, courts should be wary of issuing a writ of mandamus to compel recusal where "the basis for a recusal motion is still hypothetical and speculative." *In re Moore*, 955 F.3d 384, 390 (4th Cir. 2020).

## **ARGUMENT**

### 1. **Petitioner has no clear and indisputable right to the requested relief.**

Petitioner alleges that Judge Gergel should recuse pursuant to 28 U.S.C. § 455(a) and (b)(1). Those sections require judges to disqualify themselves from

proceedings in which their impartiality "might reasonably be questioned" or where the judge has a personal bias or prejudice against a party, or has "personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* § 455(a), (b)(1). Section 455 is self-executing and requires the presiding judge to evaluate the circumstances to determine whether recusal is necessary. *In re Beard*, 811 F.2d 818, 827 n.15 (4th Cir. 1987).[2] In light of § 455's language, relevant authority, and the standards of review set out above, Petitioner has no clear and indisputable right to a writ of mandamus. There are several grounds, apparent from a reasonable reading of the record, to support Judge Gergel's denial of the recusal motion.

### a. Petitioner's claims are untimely.

While not explicitly relied upon by Judge Gergel in refusing to recuse, the record shows that his refusal would have been justified simply because Petitioner's request for recusal came 10 years after the alleged conversation between Mr. O'Connell and Judge Norton. As this Court has recognized, "Timeliness is an essential element of a recusal motion." *United States v. Owens*, 902 F.2d 1154, 1155 (4th Cir. 1990). This timeliness requirement "applies to recusal motions under § 455(a) and (b) alike." *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 170 (4th Cir. 2014). "To prevent inefficiency and delay, motions to recuse must

---

[2] Section 455 is thus distinct from 28 U.S.C. § 144, which requires a judge to recuse when a party files a timely and sufficient affidavit alleging personal bias or prejudice for or against a party.

be filed at the first opportunity after discovery of the facts tending to prove disqualification." *United States v. Whorley*, 550 F.3d 326, 339 (4th Cir. 2008) (citation and quotation marks omitted). "To hold otherwise would encourage inappropriate 'judge shopping,'" and would "invite litigants to test the waters with a particular judge and then to take steps to create recusal grounds if the waters proved uncomfortably hot." *Owens*, 902 F.2d at 1156.

Here, as in *Owens*, Petitioner's counsel knew "the essential facts" upon which this recusal motion is based—namely his lawyer Michael O'Connell's conversation with Judge Norton. However, rather than filing a timely motion to recuse the judge, Petitioner did the exact opposite. He sought to waive his right to a jury trial and invited the judge to not only preside over the case, but to serve as the finder of fact and ultimate decision maker on both guilt or innocence and the ultimate sentence. Ex. 1 at 16. Now, almost 10 years after the alleged conversation, and more than eight years after this case was tried, Petitioner has decided that he does not like the outcome and has moved to recuse the judge.

Petitioner will likely argue that this Court should ignore the timeliness issue because he has asserted an ineffective assistance of counsel claim against O'Connell for not seeking recusal in 2015. But ineffective assistance of counsel is not a magic wand that eliminates timeliness requirements. *See, e.g.*, *Balkany v. United States*, 751 F. App'x 104, 107 (2d Cir. 2018) (finding that "[a]though the district court did

11

not consider it, timeliness "presents a serious threshold question" in determining whether a motion to recuse should be granted). A contrary rule would incentivize the type of "wait-and-see" approach that this Court has cautioned against. *See, e.g.*, *Owens*, 902 F.2d at 1156. And while the district court will doubtless have to resolve the cause and prejudice issue in evaluating Petitioner's substantive claim under § 2255, the fact that the recusal request is at least presumptively barred as untimely provides a reasonable basis to deny mandamus, especially since resolving that issue in this proceeding would lead this Court far afield from its current purpose and will require it to essentially pre-judge one of Petitioner's habeas claims.

### b. *Mr. O'Connell's statement does not provide a basis to reasonably doubt Judge Gergel's impartiality*.

Petitioner places great emphasis on Mr. O'Connell's declaration to assert that Judge Gergel's impartiality could reasonably be questioned, but the actual text of that declaration falls well short of the applicable standard because it relies solely on hearsay and does not actually attribute any particular motivation or bias to Judge Gergel.

The significant allegations regarding O'Connell's alleged conversation with Judge Norton are contained in paragraph 6, which states:

> Judge David Norton was also a law school classmate. I spoke by phone with him in the summer of 2015 after I told David Bruck I would be his co-counsel for Dylann Roof. I think Judge Norton called me to find out if I had agreed to be one of Dylann Roof's lawyers. I asked Judge

> Norton what Judge was getting the Roof case. Judge Norton told me, "Gergel really wants to do it, so I'm gonna let him have it."

Pet. Ex. 1. These allegations are insufficient to support recusal for several reasons.

First, even if Petitioner's assertions are taken as true, there is no authority to support his position that merely expressing an interest in presiding over a case creates grounds for recusal. There are numerous possible reasons for a judge to desire to preside over a certain case, and that desire is not *per se* evidence of bias.

Second, Petitioner relies on the alleged statement of a third party, recounted by his former attorney, which is classic hearsay. Courts are not required to accept allegations as true in a motion to recuse under 28 U.S.C. § 455, especially when they consist of hearsay. *See Vreeland v. Huss*, No. 18-CV-00303-PAB-SKC, 2020 WL 4582719, at *2 (D. Colo. Aug. 10, 2020) (declining to accept a party's assertions as true when they consisted of "hearsay piled upon hearsay"). The Second Circuit has noted in a recusal case brought under 28 U.S.C. § 144, which actually does require allegations to be taken as true, that while hearsay can, "in some circumstances constitute a basis for recusal, the fact that an application is based entirely on hearsay may be taken into account in judging the sufficiency of the affidavit. If mere rumor, gossip, or general conclusory opinions were sufficient, any party could reject a judge at will." *See Hodgson v. Liquor Salesmen's Union Local No. 2*, 444 F.2d 1344, 1349 (2d Cir. 1971). Here, the only portion of O'Connell's affidavit that could even provide a whiff of bias, the foundation of Petitioner's entire

13

crusade for recusal, is hearsay. Judge Gergel could have reasonably rejected the recusal motion on that basis alone.

But the substance of the declaration also undermines Petitioner's argument. The declaration is notable for what it omits. It is completely silent as to how Judge Norton reached the conclusion that Judge Gergel was interested in the Roof case. The statement merely reflects, through hearsay, Judge Norton's alleged perception of Judge Gergel's interest in the case.

Petitioner's writ continuously (mis)characterizes this declaration as if it contained unambiguous statements on the part of Judge Gergel, as opposed to an unexplained observation on the part of Judge Norton that Judge Gergel "really wants to do [the Roof case]." Petitioner frames that fairly anodyne statement in the following ways:

- "According to a sworn declaration of attorney Michael O'Connell … Judge Gergel *made it known* in 2015 that he wanted to preside over this case . . ." Pet. at 1 (emphasis added);

- "A judge *asking to preside* over a case would cause one to reasonably question his impartiality …." *Id.* at 3 (emphasis added);

- "Judge Gergel's impartiality could be doubted because he *sought to preside* over Mr. Roof's trial." *Id.* at 4 (emphasis added);

14

- "Judge Gergel *made known in the Charleston division* of the District of South Carolina that he wanted to preside over this case." *Id.* at 6 (emphasis added);

- "Judge Norton responded to Mr. O'Connell that *Judge Gergel had indicated* that he 'really wants to' preside over Mr. Roof's case." *Id.* at 7 (emphasis added);

- "Judge Gergel becoming the judge in Mr. Roof's case by *letting other judges know he wanted the case* raises serious and disturbing questions …" *Id.* at 8 (emphasis added); and,

- "Judge Gergel *sought assignment* to his case because he wanted the case" and "he *improperly conveyed* his desire for the case." *Id.* at 18 (emphasis added).

Comparing these claims to the text of Mr. O'Connell's declaration reveals considerable discrepancies between Mr. O'Connell's statements about what *Judge Norton* thought or said and Petitioner's self-serving assumptions about what *Judge Gergel* said or did. A presiding judge is not required to recuse himself simply because of "unsupported, irrational or highly tenuous speculation." *Cherry*, 330 F.3d at 665 (cleaned up). What matters is what Mr. O'Connell actually asserts, and here, what he asserts does not come close to indicating bias on Judge Gergel's part.

Indeed, even after the conversation with Judge Norton, Mr. O'Connell himself apparently did not doubt that Judge Gergel would be impartial, which is compelling evidence that Judge Norton's alleged statements do not provide a reasonable basis to doubt Judge Gergel's impartiality. On June 9, 2016, roughly a year after Mr. O'Connell's conversation with Judge Norton, Petitioner filed a Waiver of Right to Trial by Jury, indicating his willingness to be "tried and sentenced by the Court." Ex. 2. The docket entry reflects that this notice was submitted by none other than Michael P. O'Connell. Ex. 1 at 16. In other words, after allegedly having a conversation with Judge Norton about Judge Gergel's interest in the case, Mr. O'Connell still believed that Petitioner would fare better by being tried and sentenced by Judge Gergel than a jury of his peers. Mr. O'Connell does not claim in his declaration that he made a mistake in failing to seek Judge Gergel's recusal. If a highly interested observer—Petitioner's own attorney—did not believe that Judge Gergel would be biased against Petitioner, it is specious for Petitioner to argue that the same conversation would lead a non-interested party to harbor such suspicions.

### c. Judge Gergel reasonably relied on Judge Norton's and Judge Wooten's statements in resolving the motion.

Petitioner argues that Judge Gergel acted improperly by soliciting and relying upon Judge Norton's and Judge Wooten's statements in resolving the recusal motion. In fact, he claims that those actions provide even more of a basis for recusal. Petitioner offers no authority to support that argument.

As discussed above, the pertinent question under § 455 is whether a "reasonable person with knowledge of the relevant facts" could reasonably question a judge's impartiality. *Cherry*, 330 F.3d at 665. It is the judge's responsibility to determine those facts when they are in dispute. *See In re Martinez-Catala*, 129 F.3d 213, 220 (1st Cir. 1997) (explaining that "[t]o the extent that facts are in dispute, factual determinations are made by the judge whose recusal is in question"). The judge is "free to make credibility determinations, assign to the evidence what he believes to be its proper weight, and to contradict the evidence with facts drawn from his own personal knowledge." *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016). The judge is not "limited to those facts presented by the challenging party" but instead considers circumstances "both public and in hidden view." *Hinman v. Rogers*, 831 F.2d 937 (10th Cir. 1987) (citing *Idaho v. Freeman*, 507 F. Supp. 706, 723 (D. Id. 1981)).

Here, Judge Gergel executed his duty to make the factual determinations, and he did so in a proper manner. As relevant authority makes clear, Judge Gergel could have simply rejected the affidavit outright based on his personal knowledge. He could have simply stated that, based on his personal knowledge, he was not assigned the case based on any expressed desire to preside over it. That would have been sufficient to reject the allegations in the declaration and reject the recusal motion. But Judge Gergel instead chose to rely on the statements of his colleagues to demonstrate the previously hidden facts—that the assignment was made pursuant to normal processes and Judge Norton was unaware of any efforts by Judge Gergel to have the case assigned to him.

Petitioner complains that the statements upon which Judge Gergel relies have not be subjected to "adversarial testing." There is no requirement that a district court hold a full evidentiary hearing on a motion to recuse. Indeed, the fact that judges can resolve factual disputes based solely on their own personal knowledge shows that adversarial testing is not a requirement in the resolution of recusal motions under § 455. Judges frequently reject factual assertions in recusal motions based on their own personal knowledge. *See, e.g.*, *Cheney v. U.S. Dist. Ct. for D.C.*, 541 U.S. 913, 914 (2004) (Justice Scalia providing facts to support the conclusion that a reasonable person would not question his partiality based on a hunting trip with the Vice President); *Rose v. Bauman*, No. 15-11963, 2021 WL 508426, at *2 (E.D. Mich.

Feb. 11, 2021) (relying on judge's own knowledge to reject recusal motion); *United States v. Nixon*, 267 F. Supp. 3d 140, 148 (D.D.C. 2017); *Schwartz v. Steven Kramer & Assocs.*, No. CIV.A. 90-4943, 1995 WL 301363, at *5 (E.D. Pa. May 12, 1995) (same); *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 872 F. Supp. 1346, 1349-1367 (E.D. Pa. 1994), *aff'd,* 107 F.3d 1026 (3d Cir. 1997) (discussing at length the differences between filed affidavits and the judge's own recollections).

While unusual, the route Judge Gergel took is *more* thorough and reliable than simply rejecting the assertions based on his own personal knowledge. Judge Gergel is not in a position to confirm or deny what another judge said, felt, thought, or intended to do. Judge Gergel could have flatly denied Petitioner's motion to recuse based solely on his own recollection and the lack of any credible evidence of bias, and the fact that he allowed Judge Norton and Judge Wooten to file declarations to clarify the record is not affirmative evidence of bias. It is reflective of the care with which Judge Gergel has treated this case since it was assigned to him.

Moreover, it is readily apparent that Petitioner is attempting to create a situation where he can characterize the presiding judge as a fact witness and argue that recusal is required under 28 U.S.C. § 455(b)(1). *See, e.g.,* Petitioner's Motion for Reconsideration, ECF No. 1054 at 6 ("The assigned District Judge already had such extra-judicial knowledge with respect to the basis of the initial recusal motion—i.e., how the assignment of the case came about (the core disputed fact.)").

19

Petitioner's argument in this regard is misplaced because it treats facts about the administration of a case as if they were extrajudicial. *See, e.g.*, *Duckworth v. Dep't of Navy*, 974 F.2d 1140, 1143 (9th Cir. 1992) ("If a circumstance giving rise to a perceived or even a declared prejudice by a judge arises out of communications or events known to the judge only by virtue of prior judicial proceedings or actions taken by him or her in a judicial capacity (such as *administrative oversight* capacity by a chief judge, as in this case), there is no basis as a matter of law for disqualifying the judge."). And his claim that "no judge could be impartial in § 2255 proceedings involving the legal issue of his impartiality at trial," and "[t]herefore, Judge Gergel must be recused from the § 2255 proceedings," Pet. at 21, is unsupported by the law. Were the Court to adopt his argument, it would countenance precisely the type of heckler's veto so many of the cases in this context warn against: a situation where a litigant can manufacture a conflict and then obtain a new judge. *See, e.g., DeTemple*, 162 F.3d at 286–87 (reasoning that Congress "did not intend to allow litigants "to exercise a negative veto over the assignment of judges." (cleaned up)).

The approach adopted by Judge Gergel in this case shows considerable restraint and impartiality in that, instead of defending himself by offering his own version of the facts, he allowed the judge whose comments were at issue to address them. Petitioner seizes upon the fact that the declarations of Judge Norton and Judge Wooten appear to have been filed by Judge Gergel's judicial assistant to assume that

Judge Gergel must have: "solicited these statements," and "directed the filing of these statements"; "undertak[en] an investigation and fact-gathering mission of his own"; engaged in "secret fact-gathering," "*sub rosa* factfinding" and a "behind-the-scenes fact-finding mission"; or conducted "independent questioning and investigation of potential witnesses." Pet. at 2, 3, 10, 11, 23. There is no evidence or reason to believe that the presiding judge did anything beyond alerting the relevant judges that these allegations had been made and allowing their statements to be filed.

The fact that the initials of Judge Gergel's judicial assistant appear on ECF Notices regarding the filing of these judicial declarations is to be expected given that a judge does not automatically have the ability to file a document on another judge's docket. Beyond this basic reality of case administration, the presence of these initials says nothing about Judge Gergel's level of involvement in procuring these statements or influencing their content. Petitioner has once again leapt to conclusions that are neither required nor supported by the record. Conversely, the reasonable outside observer is not a "hypersensitive, cynical, and suspicious person" with "ingenuity in finding conflicts around every corner." *Johnson v. Lumpkin*, 74 F.4th 334, 341 (5th Cir. 2023) (cleaned up), *cert. denied,* 144 S. Ct. 829 (2024); *DeTemple*, 162 F.3d at 288.

Finally, the fact that Judge Gergel addressed the motion to recuse rather than ordering the Government to respond is irrelevant. "Discretion is confided in the

district judge in the first instance to determine whether to disqualify himself" because "[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312. This is especially true when the factual assertions relate to matters outside of the Government's knowledge.

Petitioner's position seems to be that Judge Gergel was required to allow the parties to interview sitting district court judges about case assignment procedures and a conversation that allegedly took place almost ten years ago. That approach would set a dangerous precedent and is not more likely to produce a fair outcome than the procedure the district court employed. *See In re Brooks,* 383 F.3d 1036, 1043 (D.C. Cir. 2004) (denying the mandamus petition and noting the petitioners had not cited a single case supporting the "extraordinary relief request[ed] — discovery of the private communications between a district judge and subordinate judicial officers regarding matters the judge has expressly stated are procedural and non-substantive"). The approach Judge Gergel adopted was not an abuse of the district court's broad discretion. Petitioner essentially argues that Judge Gergel's refusal to step aside and allow discovery "create[d] an appearance of partiality that can be dispelled only by allowing discovery." *Id.* at 1043; *cf.* Pet. at 21–22. "The circularity of this argument is manifest." *In re Brooks*, 383 F.3d at 1044.

Petitioner also criticizes the form of the judicial statements and the fact that Judge Norton's statement is "unsworn." As explained above, Judge Wooten submitted a sworn affidavit whereas Judge Norton's statement is styled like a standard judicial order issued in the District of South Carolina. However, either approach is defensible. Judges are not precluded from submitting sworn statements as Judge Wooten has done, but there is also a well-established practice for judges to respond to recusal motions or other accusations in written orders, which are signed but not sworn, as Judge Norton has done. *See* discussion *supra* pp. 17–18. The fact that each of these judges elected to submit their statements in different formats undermines Petitioner's suggestion that Judge Gergel recruited these statements or exercised any influence over their form or content, or that the other judges coordinated with one another regarding the statements.

### d. Petitioner's other evidence fails to show bias.

Aside from the declaration of Mr. O'Connell, Petitioner's other evidence that Judge Gergel was or appeared to be biased is so weak as to merit only passing discussion in the Petition for Writ of Mandamus. *See id.* at 8. For example, Petitioner cites the fact that Judge Gergel referred to the family members of the victims as "my victims" during (non-jury) hearings over whether the competency proceedings would be sealed. No reasonable person would interpret this phrase as demonstrating bias against the defendant.

Petitioner also faults the presiding judge for "rolling his eyes" at one point during the competency hearing when a defense attorney was continuing to press a point the judge felt had been adequately covered. That occurrence hardly presents an appearance of bias. *See Singh v. Garland*, 20 F.4th 1049, 1054 (5th Cir. 2021) (allegation that an immigration judge "smirked and literally rolled her eyes in disbelief" did not establish bias); *United States v. Robbins*, 197 F.3d 829, 848 (7th Cir. 1999) (no evidence of bias or hostility where the judge "sat back in [his] chair and rolled [his] eyes and threw [his] pen down.").

Likewise, Petitioner cites an instance where the judge, in referring to a disagreement between Petitioner and his trial counsel, said "you cannot have a two-headed monster in the representation of a party. You can not have two people making a decision, you must have one person." *See* Pet. Ex. 8. Petitioner's brief mention of

that incident and careful curating of the supporting exhibit excludes a key exchange that occurred later that same day in which defense counsel took exception to the court's comment. In that exchange, Judge Gergel clarified that he was "describing the—a situation where we have two people making a decision, that that situation is a two-headed monster. I was not referring to y'all personally … It's a euphemism, it has nothing to do with y'all individually." Transcript of Jury Selection, Dec. 2, 2016, attached as Exhibit 3, at 2-3.

Such examples pale in comparison to judicial expressions of displeasure that have been found insufficient to support recusal. *See, e.g.*, *United States v. Collier*, 932 F.3d 1067, 1079 (8th Cir. 2019) (judge's comment that a defendant's case was "stupid" did not show bias); *United States v. Perkins*, 787 F.3d 1329, 1337, 1342-43 (11th Cir. 2015) (comment to a criminal defendant that he should not resist because "we're going to get you anyway" and "[it's] the ones like you that I hate the most" did not show bias); *Preston v. CitiMortgage*, 522 Fed. Appx. 426, 428 (10th Cir. 2013) (district judge referring to plaintiffs as "state-court losers" did not require recusal); *United States v. Guglielmi*, 615 F. Supp. 1506, 1511 (W.D.N.C. 1985) (judge's comment that the child pornography materials possessed by the defendant were "some of the worst things I've ever even heard of in my life" did not show bias requiring recusal); *see also Belue*, 640 F.3d at 573 *("[E]xpressions of impatience,*

dissatisfaction, annoyance, and even anger … are generally insufficient to support a recusal motion." (citation and quotation marks omitted)).

Finally, the statements from Petitioner's trial lawyer, David Bruck, and from Meredith Childs, who was at the time a law student assisting Petitioner's trial attorneys, do not allege the type of bias or appearance of bias that warrants recusal. The statements fail to offer examples of judicial intemperance or hostility that come anywhere close to what is required to establish the appearance of bias or partiality as noted above. Instead, they try weave the appearance of bias based on innuendo, speculation, and, in the words of Ms. Childs, "vibe[s]." Pet. Ex. 10 at ¶ 31 Those assertions are insufficient.

Furthermore, Mr. Bruck appears to allege that Judge Gergel's alleged bias against Petitioner and in favor the victims began after Judge Gergel ruled that the victims' families had to be excluded from Petitioner's competency hearing in the summer of 2016. *See* Pet. Ex. 11 at ¶ 12. However, there is no evidence that Petitioner, Mr. Bruck, or any other members of the trial team harbored concerns that the presiding judge appeared to be biased at the outset of the case. In fact, Petitioner believed Judge Gergel liked him and he called Judge Gergel his "friend" when speaking to a mental health examiner. Competency Hearing Transcript, Nov. 22, 2016 attached as Exhibit 4 at 48:25-49:2, 221:12-23. Moreover, the fact that they

affirmatively sought to have Petitioner's guilt and sentence adjudicated by the judge strongly suggests these concerns were not present at that time in June of 2016.

Even assuming that the judge developed a negative view of Petitioner as alleged by his counsel, the Supreme Court has made clear that the fact that a judge comes to have a negative view of a party as a result of the presentation of evidence or arguments offered by that party is not the type of "bias or partiality" that requires recusal. A "judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person." *Liteky v. United States*, 510 U.S. 540, 550-51 (1994). This does not, however, require the judge to recuse himself as biased as "his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings …." *Id.* at 551.

Ms. Childs' allegations regarding Judge Gergel's alleged response to the families of the victims and their testimony suffers from the same deficiency. It would be neither surprising nor improper if the presiding judge was appalled by the horrific violence that Petitioner inflicted on people who welcomed him into their church or if he were angered by Petitioner's shocking lack of remorse. "If it were otherwise— if strong views on a matter were disqualifying—then a judge would hardly have the freedom to be a judge." *Belue*, 640 F.3d at 573. For these reasons, Petitioner's other evidence of bias is clearly insufficient to show that he is entitled to recusal.

**2. Petitioner cannot show that he has no other means available to obtain relief.**

"[E]xtraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay and perhaps unnecessary trial." *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953). *See also*, *In re Moore*, 955 F.3d at 390 (reasoning that petitioner was not "without a remedy" because he could challenge the district court's refusal to recuse itself on appeal).

Petitioner has an adequate avenue of relief. Petitioner has argued in his § 2255 motion that Judge Gergel presiding over his case violated his due process rights for the same reasons he alleges that Judge Gergel should be recused. *See* Dylann Storm Roof's Motion to Vacate, Set Aside, or Correct Conviction & Sentence Pursuant to 28 U.S.C. § 2255 at 338-343, *United States v. Roof*, No. 2:15-cr-00472-RMG, ECF No. 1057. Petitioner also argues that his attorneys were constitutionally ineffective for failing to move for recusal at the time of trial. *See id.* at 343-45. Should the district court reject these arguments, Petitioner would have the ability to seek a certificate of appealability (in the event one is not granted) and present these arguments to this Court. *See In re Cabezas*, No. 22-14054-A, 2023 WL 6784344, at *2 (11th Cir. Mar. 1, 2023) (denying a writ of mandamus because the § 2255 petitioner "has the adequate alternative remedy of attempting to raise the recusal issue in an appeal once a final judgment is entered in his § 2255 proceedings."). The cases cited by Petitioner do not alter this analysis. Those cases involved recusal

motions brought during the original proceedings, where the petitioners faced protracted litigation on a variety of issues before a biased judge. Here, the only issue to be resolved is the § 2255 motion and possible ancillary discovery and evidentiary hearing motions.

Furthermore, as discussed above, because Petitioner's defense counsel waited almost ten years to come forward with his alleged conversation with Judge Norton, Petitioner's claims are untimely, and a claim for ineffective assistance of counsel is the only possible remedy that remains. Those claims of ineffective assistance of counsel are not currently before this Court. So not only does Petitioner have another potential remedy available, the *only* potential claim he has remaining is not yet ripe.

**3. Petitioner has not shown that a writ of mandamus is appropriate under the circumstances.**

The final factor under the mandamus standard, whether issuance of the writ is "appropriate under the circumstances," calls for the Court to exercise judgment about whether this particular situation actually calls for application of this "extraordinary remedy." *See Kerr*, 426 U.S. at 403 (observing that "issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed"). "The very power of the writ of mandamus demands that its availability be limited to narrow circumstances lest it quickly become a shortcut by which disappointed litigants might circumvent the requirements of appellate procedure mandated by Congress." *In re Catawba Indian Tribe of S.C.*, 973 F.2d at 1135.

Petitioner suggests that the writ of mandamus is appropriate here because of the high stakes inherent in a capital case. However, capital defendants have unique incentives to pursue recusal motions to delay the consideration of motions filed under 28 U.S.C. § 2255. As the Supreme Court has observed, petitioners in post-conviction capital cases have a unique and particularly strong interest in delaying the resolution of their claims. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (noting the reality that "capital petitioners" have an incentive to "deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death"). As a result, motions to recuse the judge—particularly motions submitted after the verdict and sentence have been rendered—appear to have become a common part of the capital defense playbook. *See, e.g., Snarr v. United States*, No. 1:13-CV-724, 2023 WL 4237095, at *3 (E.D. Tex. June 28, 2023) (denying capital defendant's motion for recusal); *Nelson v. United States*, 297 F. App'x 563, 566 (8th Cir. 2008) (affirming denial of capital defendant's motion to recuse judge); *Allen v. United States*, No. 4:07CV0027 ERW, 2008 WL 2754804, at *5 (E.D. Mo. July 11, 2008) (denying capital defendant's motion to recuse the trial judge from considering defendant's § 2255 motion); *Umana v. United States*, No. 3:16-cv-00057-RJC, 2018 WL 1511737 (W.D.N.C. March 27, 2018) (same); *Gabrion v. United States*, No. 1:15-CV-447, 2018 WL 4786310, at *46 (W.D. Mich. Oct. 4, 2018), *aff'd,* 43 F.4th 569 (6th Cir. 2022) (denying capital § 2255 petitioner's argument that his trial

counsel was ineffective for failing to move for recusal of the trial judge); *see also Gabrion v. United States*, No. 1:15-CV-447, ECF No. 99 (W.D. Mich. March 8, 2017) (denying as moot capital § 2255 petitioner's motion to recuse the trial judge).

Petitioner has an even stronger incentive to disqualify Judge Gergel in this case, as many of the claims raised in Petitioner's § 2255 motion involve detailed factual issues related to Judge Gergel's own perceptions during Petitioner's trial. Indeed, the key reason evidentiary hearings are often unnecessary in § 2255 litigation is because the motion is resolved by the same judge who tried the case in the first instance. *See Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) (noting that a "judge's recollection of the events at issue may enable him summarily to dismiss a § 2255"). Granting mandamus and requiring resolution of the § 2255 motion by a judge completely unfamiliar with the case would be inappropriate here, where Petitioner has wholly failed to show that the judge who has presided over this case for a decade has personal bias or that his impartiality could reasonably be questioned.

## CONCLUSION

When applying the mandamus rule to the substantive recusal standard, relief is warranted only "if it is clear and indisputable that no reasonable reading of the record supports a refusal to recuse." *In re Bulger*, 710 F.3d at 45–46. Petitioner fails to meet that demanding standard. He can pursue relief through his § 2255 motion, he does not have any clear and indisputable right to relief, and relief is not appropriate under the circumstances. The petition must be denied.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: *s/ Christopher B. Schoen*
Christopher B. Schoen
Assistant United States Attorney
55 Beattie Place, Suite 700
Greenville, SC 29601
Tel. (864) 282-2100
Fax. (864) 233-3158
Email: Christopher.Schoen@usdoj.gov

*s/ Kathleen M. Stoughton*
Kathleen M. Stoughton
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel. (803) 929-3114
Fax. (803) 254-2912
Email: Kathleen.Stoughton@usdoj.gov

July 7, 2025

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

**No.: 25-2**      **Caption:** *In re: Dylann Roof*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

| |
|---|
| **Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f). |

| |
|---|
| **Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing *en banc* may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1). |

| |
|---|
| **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). |

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑      this brief or other document contains 7737 words.

This brief or other document complies with the typeface and type style requirements because:

☑      this brief or other document has been prepared in a proportionally spaced typeface using

**Microsoft Word 365**      [*identify word processing program*] in
**Times New Roman 14 Point**[*identify font size and type style*].

*/s/ Christopher B. Schoen & Kathleen M. Stoughton,* Assistant United States Attorneys
*for United States of America., Respondent*
Dated: July 7, 2025