No. 25-2

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## In re DYLANN ROOF,

Appellant.

_____

## REPLY IN SUPPORT OF WRIT OF MANDAMUS

_____

Jill E.M. HaLevi
Mediation and Legal Services
102 Broad Street, Suite C
Charleston, SC 29401
Phone: 843-819-0557
Email: jill@charlestonmediator.com

Angela S. Elleman
Chief, Capital § 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org

*Attorneys for Defendant-Appellant*

# TABLE OF CONTENTS

Table of Authorities.................................................................................................3

I. Introduction.......................................................................................................1

II. Argument .........................................................................................................3

    A. Judge Gergel's independent fact-finding mission was highly improper because judges "shall not investigate facts in a matter independently." .................3

    B. Judge Wooten's statement only shows how easy it would be for a judge's preferences to factor into case assignments, whether explicitly or implicitly........5

    C. The question in this recusal motion is whether a new judge should preside over § 2255 proceedings, and an ineffective assistance claim would not address that question.............................................................................................................10

III. Conclusion .....................................................................................................13

Certificate of Compliance .....................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009) ...................................1
*Crawford v. United States*, 66 F.4th 1339 (Fed. Cir. 2023) ......................................14
*In re Al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019) ......................................................13
*In re Murchison*, 349 U.S. 133 (1955) .......................................................................1
*McNeil v. Wisconsin*, 501 U.S. 171 (1991) .................................................................2
*Owens v. United States*, 517 F. Supp. 2d 570 (D. Mass. 2007) ...............................14
*Rice v. McKenzie*, 581 F.2d 1114 (4th Cir. 1978).......................................................2
*United States v. Pola*, No. 3:09-CR-5-R, 2016 WL 4098574 (W.D. Ky. July 28, 2016) ...........................................................................................................14
*Wolfe v. Clarke*, 819 F. Supp. 2d 538 (E.D. Va. 2011) ............................................14

**Statutes**

28 U.S.C. § 2255 .........................................................................................................11
28 U.S.C. § 455 ...........................................................................................................11

**Ethical Canons**

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 478 (2017) ...........2, 4
Code of Conduct for United States Judges Canon 3(A)(4) (2019)...........................4
Model Code of Judicial Conduct Canon 2, Rule 2.9(C) (2020) ..........................1, 4

**Local Rules and General Orders Regarding Case Assignment**

C.D. Cal. General Order No. 24-04 ...........................................................................10
D. Utah Local Cr. R. 57-2 ..........................................................................................10
D.C. Local Civ. R. 40.3 ..............................................................................................10
E.D. Cal. Local Rules App'x A ..................................................................................10
E.D. Mich. Local Cr. R. 57.10 ...................................................................................10
E.D. Va. Standing Order re: Case Assignments .........................................................9
M.D. Fla. Local R. 1.05 ..............................................................................................10
M.D.N.C. Standing Order No. 21 ................................................................................9
N.D. Cal. General Order 44 ........................................................................................10
N.D. Oh. Local Cr. R. 57.9 .........................................................................................10
N.D.W.V. Sixth Amend. Standing Order No. 1 ...........................................................9
S.D. Fla. Internal Operating Procedure 2.01.01.........................................................10
S.D.N.Y. Rules for Division of Business Among District Judges, R. 6 ......................9

# I. INTRODUCTION

The government's Response makes no convincing argument against a remand for additional fact-finding. Quite the contrary, their conclusory statements regarding what Judge Gergel did or did not do to prompt declarations from his colleagues only bolster the need for, at the very least, a fact-finding hearing. As Mr. Roof explained in his Mandamus Petition, there are two issues in this case. The first is evidence that Judge Gergel's impartiality could be doubted because he sought to preside over Mr. Roof's trial. The second and more disturbing issue is that Judge Gergel's response to a recusal motion was to undertake his own behind-the-scenes fact-gathering mission. The fact-finding was outside the presence of the parties, without the parties' knowledge, and off the record—which is a wholly inappropriate way for a judge to resolve any motion, let alone a recusal motion. Mr. Roof petitioned this Court to order recusal or remand the issue for an evidentiary hearing on the factual disputes and a determination before an impartial judge.

"It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 876 (2009) (alteration in original) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). It is equally axiomatic that judges "shall not investigate facts . . . independently," Model Code of Judicial Conduct Canon 2, Rule 2.9(C) (2020), but must instead

1

"consider only the evidence presented by the parties," ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 478 (2017). "What makes a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con adduced by the parties." *McNeil v. Wisconsin*, 501 U.S. 171, 181, n.2 (1991).

The ultimate question raised by the recusal motion is "whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all of the circumstances." *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir. 1978). At this juncture, the Court must also determine whether to remand for a hearing on the recusal motion. Even if there are enough unanswered questions that ordering Judge Gergel to immediately recuse from Mr. Roof's § 2255 may be premature, there is no colorable argument against a hearing. In the face of Judge Gergel's opaque independent fact-finding mission, nothing in the government's Response refutes the need for a hearing on the recusal motion, held before an independent decisionmaker, based on properly presented evidence.

This reply emphasizes three points. First, the government grossly understates how concerning Judge Gergel's independent, off-the-record investigation is. Second, the government relies heavily on Judge Wooten's statement, ignoring that neither his statement nor Judge Norton's statement resolves key factual questions.

By the same token, the government emphasizes that Michael O'Connell's declaration contains hearsay. In their attempt to shift the focus, however, they ignore the critical problem: Mr. O'Connell's declaration raises serious questions about Judge Gergel's impartiality, necessitating additional fact-finding conducted according to standard procedures. They also ignore the even more disturbing fact that Judge Gergel's response to the affidavit was to conduct his own opaque and improper fact-finding mission. Third, the government argues that this issue should be raised as an ineffective assistance of counsel claim in § 2255 proceedings. Mr. Roof agrees that this issue should be considered in § 2255 proceedings. But raising the issue in § 2255 proceedings does not answer whether Judge Gergel can fairly preside over those § 2255 proceedings. And that is the question presented in the recusal motion.

## II. ARGUMENT

### A. Judge Gergel's independent fact-finding mission was highly improper because judges "shall not investigate facts in a matter independently."

While acknowledging that Judge Gergel's fact-finding was "unusual," the government argues that his independent fact-finding mission is, essentially, nothing to worry about. Resp. at 19-21. In support of this argument, the government asserts, "Judge Gergel could have simply rejected the affidavit outright based on his personal knowledge"—as if that somehow allows a judge to engage in an independent fact-finding mission. Resp. at 18. The government also characterizes

the judge's fact-finding mission as "cho[osing] to rely on the statements of his colleagues . . . ." Resp. 18. But this characterization elides the operative fact: the colleagues' statements were elicited in an opaque fact-finding process, contrary to judicial ethics. Whether or not Judge Gergel could have rejected an affidavit outright, he was not entitled to undertake an independent fact-finding mission in order to decide how to rule on a motion filed by a party in a case before him. Because judges are prohibited from independently investigating, relying on his colleagues' statements—let alone soliciting them—was simply not a choice Judge Gergel was ethically permitted to make. *See* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 478 (2017); Code of Conduct for United States Judges Canon 3(A)(4) (2019); Model Code of Judicial Conduct Canon 2, Rule 2.9(C) (2020).

If the government's point is that we do not know exactly what Judge Gergel's fact-finding mission entailed, that is true enough. *See* Resp. at 21 ("the presence of these initials says nothing about Judge Gergel's level of involvement in procuring these statements or influencing their content. Petitioner has once again leapt to conclusions . . ."). Indeed, Mr. Roof himself made this point in his Mandamus Petition. *See* Pet. at 2 ("The logical inference, based on how they appear on the docket, is that Judge Gergel solicited these statements. However,

4

their origin is not definitively known."). But the opacity of the process makes Judge Gergel's independent fact-finding mission *more* concerning, not less.

The recusal motion questions whether Judge Gergel can fairly preside over Mr. Roof's § 2255 case. The judge's response to the recusal motion does nothing to assuage concerns that he cannot.

**B. Judge Wooten's statement only shows how easy it would be for a judge's preferences to factor into case assignments, whether explicitly or implicitly.**

The government relies heavily on Judge Wooten's statement that he assigned this case according to the District of South Carolina's typical procedure. There is nothing reassuring in that statement. The District's case assignment procedure gives the Chief Judge unfettered discretion; as Judge Wooten says, "the assignment of criminal cases was at the discretion of and under my supervision," and, pursuant to this discretion, he assigned cases based on "caseloads" and "related cases." Ex. 13 (Wooten Statement) ¶ 4. There is no explanation of how "caseloads" were measured or how related cases were determined.[1] Asserting that cases were

---

[1] Is a judge's caseload based on the number of cases pending? Or the number of cases assigned to that judge within the last year? If the relevant metric is pending cases, is a case part of the district judge's caseload if the district court has reached a final decision but an appeal is pending? Does every case carry the same weight, such that a criminal case alleging one count of violating § 922(g) is treated the same as a multi-defendant antitrust conspiracy with over a million pages of produced documents and a motion to take more than ten depositions? If every case does not carry the same weight, is there a standard procedure determining how much caseload credit a judge gets for any given case? What happens if a judge with an already full caseload (however that is determined) receives an unanticipated remand in a particularly complex case?

More importantly, how are these decisions made? Who determines the judges' "caseloads"? Is there any written policy? Is there any unwritten policy? Does the Chief Judge

assigned "at the discretion of and under [the] supervision of" the Chief Judge based on his assessment of "caseloads" does not meaningfully explain how cases are assigned, either in general or in specific cases. *Id.*

As such, this system does not eliminate the risk that judges' preferences could be a factor. A judge may make it known around the courthouse that he would happily work extremely hard to fit a certain case into his caseload. Surely most lawyers are familiar with feeling busy enough not to seek more work for the sake of work, but also finding time for a particularly appealing case.

Similarly, while Judge Wooten says that "at no time did Judge Gergel request of me that Roof's case be assigned to him," Ex. 13 (Wooten Statement) ¶ 5, this does not rule out that Judge Gergel's preference influenced Judge Wooten in some way. Judge Wooten does not state that he was unaware of Judge Gergel's interest in the case, or that Judge Gergel never suggested he would be interested in it. This omission is important because Mr. O'Connell's declaration alleges that Judge Norton told him "Gergel really wants to do it," not that Judge Gergel directly asked for it. Ex. 1 (O'Connell Dec.) ¶ 6. Judge Wooten also does not state that Judge Gergel's interest in the case was irrelevant to how the case was assigned. He says the case was "assigned to Judge Gergel in the routine process as previously

consult with judges about general guidelines? Does the Chief Judge consult with judges about their specific circumstances?

6

outlined." Ex. 13 (Wooten Statement) ¶ 5. But "the routine process" is assigning

cases "at the discretion of and under my supervision." *Id.* at ¶¶ 4, 5. An assignment

system relying entirely on the Chief Judge's discretion could be easily influenced

by a judge's well known interest in a case.

Judge Norton's statement offers no further clarity. While Judge Norton

focuses on his lack of involvement in the assignment of Mr. Roof's case, that was

never Mr. Roof's claim. Mr. O'Connell's recollection is not that Judge Norton

steered or "played a role in the assignment of" the case to Judge Gergel. Ex. 5

(Norton Statement) ¶ 5; *see also generally* Ex. 1. (O'Connell Dec.). Mr.

O'Connell's recollection is that Judge Norton knew Judge Gergel "really want[ed]

to do" the case and, in essence, had no objection. Ex. 1 (O'Connell Dec.) ¶ 6.

Thus, Judge Norton's insistence that he played no role in assigning the case

does not contradict Mr. O'Connell's declaration. Nor does it resolve the question of

whether Judge Gergel made known his desire to preside over the case. Nor does it

resolve the question of whether, in his exercise of discretion, Judge Wooten was

influenced by Judge Gergel's desire to preside over Mr. Roof's case. Rather, Judge

Norton confirms that "[t]he assignment of criminal cases is made under the

direction and supervision of the Chief Judge." Ex. 5 (Norton Statement) ¶ 3.[2]

---

[2] A glance at the District's case assignments raises further questions about the discretionary process. The District's website has a list of "Cases Of Interest," with "information on some cases in the United States District Court, District of South Carolina, that received

Unlike the District of South Carolina, many districts have written procedures for ensuring that cases are assigned randomly, including four of the districts within the Fourth Circuit. "The Eastern District of Virginia uses an automated case assignment system for criminal cases that assigns cases to District Judges and Magistrate Judges by Division in a random sequence from Division case decks based on subject matter and number of defendants." E.D. Va. Standing Order re: Case Assignments.[3] In the Middle District of North Carolina, "judges are assigned to monthly criminal terms rotated among judges, usually set by the Court annually and modified as needed from time to time." M.D.N.C. Standing Order No. 21.[4] And the Northern District of West Virginia assigns cases by county. N.D.W.V. Sixth Amend. Standing Order No. 1.[5] Many districts outside the Fourth Circuit

significant public or media attention." Of the four cases listed, three are assigned to Judge Gergel. *See* District of South Carolina, Cases Of Interest, https://www.scd.uscourts.gov/cases/index.asp.

The four cases listed are: 2:18-mn-02873-RMG, *In Re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, MDL 2873; 2:16-cr-00378-DCN, *USA v Slager*; 2:15-cr-00472-RMG, *USA v Roof*; 2:14-mn-02502-RMG; *In Re Lipitor (Atorvastatin Calcium) Marketing Sales Practices and Products Liability Litigation* (No II), MDL 2502. Two of the cases are Multidistrict Litigation cases, which are assigned by a judicial panel, but require the chief judge to consent to the case being assigned to a judge in the district. The only listed case not assigned to Judge Gergel is the federal prosecution of Michael Slager, which was filed while Mr. Roof's federal case was pending (and, as Mr. Roof's § 2255 Motion explains in detail, the state trial of Mr. Slager took place at the exact same time as Mr. Roof's case, across the street from the federal courthouse).

[3] Available at https://www.vaed.uscourts.gov/sites/vaed/files/Standing%20Order%20re%20Case%20Assignment.pdf.

[4] Available at https://www.ncmd.uscourts.gov/sites/ncmd/files/SO21.pdf.

[5] Available at https://www.wvnd.uscourts.gov/sites/wvnd/files/Sixth%20amended

similarly have rules requiring random assignment of cases and setting out

procedures to ensure random assignments.[6]

%20order%20Distritc%20judges.pdf.

[6] A few examples: In the Southern District of New York, "the magistrate judge on duty will randomly draw from the criminal wheel, in open court, the name of a judge to whom the case should be assigned for all purposes." *See* S.D.N.Y. Rules for Division of Business Among District Judges, R. 6.

In the Central District of California, "a case with a criminal case number (i.e., d:yy-CR-xxxxx) will be randomly assigned from a division-specific General Criminal Assignment Deck." C.D. Cal. General Order No. 24-04 (footnote omitted). To account for caseloads, "[i]f a criminal case includes eight or more defendants . . . or if the presentation of evidence (including cross-examination) in the government's case-in-chief will exceed twelve trial days, the government must file with the Court . . . a Notice of Complex Case . . . . A case so designated ("Complex Case") will be randomly assigned from a division-specific Complex Criminal Assignment Deck." *Id.* If a criminal case involves charges that carry a potential death sentence, the case is assigned from the Complex Criminal Assignment Deck." *Id.*

In the Northern District of California, "Cases shall be assigned blindly and at random by the Clerk by means of an automated system approved by the judges of the court." N.D. Cal. General Order 44.

In the Eastern District of California, cases are assigned pursuant to a "deck" which "'shall' contain a number of 'cards' signifying the name of each active Judge. The number of cards for each Judge shall be equal, except as may from time to time be determined by the Court" and "[t]he 'deck of cards' shall be automatically shuffled by the computer at the time the categories are filled and each time an assignment is made, so that the sequence of the Judge's names shall be random and secret." E.D. Cal. Local Rules App'x A.

In the District of Columbia, "civil, criminal and miscellaneous cases shall be assigned to judges of this Court selected at random" using an "assignment deck in the automated system." D.D.C. Local Civ. R. 40.3.

In the Eastern District of Michigan, "the Clerk shall employ a random method for the assignment of criminal cases to Judges" for three of the courthouses and "shall assign criminal cases to the Judge regularly holding court in" the other two courthouses. E.D. Mich. Local Cr. R. 57.10.

In the Northern District of Ohio, "each criminal case, shall be assigned by random draw to a District Judge" and can be reassigned only in limited, specified circumstances. N.D. Oh. Local Cr. R. 57.9.

In the Southern District of Florida, "All civil and criminal cases, including those within a weighted category, shall be assigned on a blind random basis so that the District workload is fairly and equally distributed among the active Judges irrespective of jury division[.]" S.D. Fla. Internal Operating Procedure 2.01.01.

In the Middle District of Florida, "On receipt of an initial paper, the clerk must classify the paper as civil, criminal, or miscellaneous; assign the paper a distinct number; and randomly assign the paper to a district judge, a magistrate judge, or both. The clerk cannot change the

Of course, one important reason so many courts have established, written procedures for randomly assigning cases is that a system based entirely on discretion leaves too much room for improper factors to influence assignments.[7] That is precisely why Judge Wooten's assurance that the case was assigned according to the typical procedure, which was simply Judge Wooten's exercise of discretion, provides no reassurance.

**C. The question in this recusal motion is whether a new judge should preside over § 2255 proceedings, and an ineffective assistance claim would not address that question.**

Third, the government ignores a key distinction between an ineffective assistance of counsel claim in a § 2255 proceeding and a motion for recusal. Mr.

---

initial assignment without an order from the judge or the chief judge. The clerk must report promptly to the chief judge an apparent attempt to evade the random assignment of an initial paper." M.D. Fla. Local R. 1.05.

In the District of Utah, "an automated system randomly assigns" cases. D. Utah Local Civ. R. 83-2; D. Utah Local Cr. R. 57-2.

[7] Many districts have cases of interest listed on their websites, as the District of South Carolina does. Notably, for the districts listed above that have random assignment procedures and have such a list comprising more than one case, no one judge is assigned to preside over a such a disproportionate number of cases of interest as in the District of South Carolina. *See* Eastern District of Virginia, Notable Cases, https://www.vaed.uscourts.gov/notable-cases; Southern District of New York, Rulings of Special Interest, https://www.nysd.uscourts.gov/cases/rulings-of-special-interest; Central District of California, Cases of Interest, https://www.cacd.uscourts.gov/newsworthy/cases-of-interest; Northern District of California, Cases of Interest, https://cand.uscourts.gov/cases-e-filing/cases-of-interest; District of District of Columbia, Cases of Interest, https://www.dcd.uscourts.gov/cases-interest; Eastern District of Michigan, Cases of Interest, https://www.mied.uscourts.gov/index.cfm?pageFunction=CasesOfInterest; Northern District of Ohio, Notable Cases, https://www.ohnd.uscourts.gov/notable-cases; Middle District of Florida, Noteworthy Cases, https://www.flmd.uscourts.gov/noteworthy-cases.

Roof agrees that trial counsel neglecting to raise the issue of how the case was assigned should be addressed as an ineffective assistance claim. A § 2255 claim, however, does not negate the need for a procedurally appropriate and transparent fact-finding process as to the recusal motion.

Ineffective assistance claims in § 2255 motions and recusal motions are different. An ineffective assistance claim is backward-looking, asking a court to assess whether the result of a trial is reliable. If the court determines that an ineffective assistance claim is meritorious, the remedy is a new trial (or penalty phase). *See* 28 U.S.C. § 2255(b). By contrast, a recusal motion is forward-looking. The motion asks for a new judge to rule on future questions in the case—including ineffective assistance claims in a § 2255. If the court determines that a recusal motion is meritorious, the remedy is appointment of a new judge to preside over the case going forward. *See* 28 U.S.C. § 455.

In other words, the issue in Mr. Roof's recusal motion is *who should decide* the claims raised in Mr. Roof's § 2255—including, of course, the ineffective assistance claim about the judicial assignment. As such, a § 2255 claim cannot replace this recusal motion because § 2255 claims cannot resolve whether Judge Gergel can fairly rule on claims raised in the § 2255. Trial counsel's ineffectiveness says nothing about whether Judge Gergel can fairly preside over § 2255 proceedings, particularly considering his disturbing response to the recusal motion.

11

Certainly counsel's ineffectiveness does not obviate the necessity of a hearing on the recusal motion, particularly in light of Judge's Gergel's disturbing response to the motion.

Because an ineffective assistance claim will not and cannot resolve whether Judge Gergel can impartially preside over the § 2255 proceedings, there is no benefit to resolving the recusal issue later. Indeed, for all the government's allegations of delay out of the "capital defense playbook," *see* Resp. at 30, nothing would create more delay and inefficiency than a remand from this Court after the district court ruled on the § 2255. All the government is really saying is that Mr. Roof's argument regarding recusal should not be taken seriously, and that no court should ever meaningfully consider the issue or allow proper factual development.

But there are too many irregularities to ignore. Paramount among them is Judge Gergel's decision to carry out an independent, opaque, and improper investigation of the facts, and then to base his ruling on the recusal motion on his independent fact-finding mission. The government correctly points out that many questions remain. But the government's allegation that Mr. Roof has "leapt to conclusions" rings hollow. Resp. at 21. It is the government that wants to ignore these disturbing questions and leap to the conclusion that nothing untoward happened. That is a dangerous path. *See, e.g.*, *In re Al-Nashiri*, 921 F.3d 224, 237 (D.C. Cir. 2019) (courts initially rejected a claim that a presiding judge should be

12

disqualified, but in light of evidence gathered through a FOIA request, the D.C. Circuit issued a writ of mandamus and vacated all of the orders issued in the case by the judge, holding that courts "cannot permit an appearance of partiality to infect a system of justice that requires the most scrupulous conduct from its adjudicators").[8] Too many disturbing facts are already known and these red flags cannot be ignored.

### III. CONCLUSION

In response to a recusal motion, Judge Gergel undertook a behind-the-scenes fact-gathering mission. The government criticizes Mr. Roof for characterizing it

---

[8] There are myriad other examples of cases where courts hastily dismissed claims only to find, after years of litigation, that previously uncovered facts proved the claims. *See, e.g.*, *Crawford v. United States*, 66 F.4th 1339 (Fed. Cir. 2023) (after Mr. Crawford's case was tied up for nearly a decade before various agencies, the Army Board for the Correction of Military Records ultimately determined that Mr. Crawford's PTSD was connected to his two decades of military service, making him eligible for the medical retirement benefits he had been denied, and further found that this determination could have been made based on evidence that had been available all along); *United States v. Pola*, No. 3:09-CR-5-R, 2016 WL 4098574 (W.D. Ky. July 28, 2016), *on remand by Pola v. United States*, 778 F.3d 525 (6th Cir. 2015) (Initially, "[w]ithout conducting an evidentiary hearing, the district court concluded that [the defendant] Pola could not establish that [his attorney] Partin did not file a notice of appeal after Pola expressly requested that Partin do so"; but after the court of appeals remanded for an evidentiary hearing, the district credited Pola's testimony that he "100 percent" remembers asking his attorney to file an appeal over his attorney's statement "that he would have filed an appeal if Pola had so instructed."); *Wolfe v. Clarke*, 819 F. Supp. 2d 538 (E.D. Va. 2011), *on remand by Wolfe v. Johnson*, 565 F.3d 140 (4th Cir. 2009) (the district court initially dismissed a claim because it believed it was unsupported and speculative, but after remand for a hearing, the district court found that prosecutors withheld evidence in violation of *Brady*); *Owens v. United States*, 517 F. Supp. 2d 570 (D. Mass. 2007), *on remand by Owens v. United States*, 483 F.3d 48 (1st Cir. 2007) (the court of appeals noted that "district court declined to conduct an evidentiary hearing because it found that Owens' allegations were inherently incredible" and remanded the case; after remand, the district court credited the testimony of defendants' family members that they were barred from the courtroom and granted relief).

this way, but there is no other way to characterize what happened. After Mr. Roof filed a recusal motion, statements from two of Judge Gergel's colleagues appeared on the docket. Twenty-three minutes later, Judge Gergel issued an order extensively relying on those statements. Moreover, the statements confirm that the District of South Carolina's case assignment process relied entirely on the Chief Judge's discretion. As such, they do not actually disprove that Judge Gergel's interest in Mr. Roof's case played a role in the decision to assign the case to him. The question in this recusal motion is whether Judge Gergel can impartially preside over Mr. Roof's § 2255 proceedings. There are many reasons to be concerned that he cannot. A claim of ineffective assistance in a § 2255 motion cannot resolve whether Judge Gergel can impartially preside over § 2255 proceedings. If the Court does not immediately recuse Judge Gergel from Mr. Roof's case, it should at least remand for further, properly conducted fact-finding on Judge Gergel's potential bias.

Therefore, the Court should grant mandamus and order recusal. Should this Court find that further factual development is necessary based on the factual disputes that developed in the proceedings below, this Court should remand the recusal matter to the district court before an impartial judge for an evidentiary hearing.

Dated: July 16, 2025

Respectfully submitted,

/s/ Jill E.M. HaLevi
Jill E.M. HaLevi
Mediation and Legal Services
102 Broad Street, Suite C
Charleston, SC 29401
Phone: 843-819-0557
E-Mail: jill@charlestonmediator.com

/s/ Angela S. Elleman
Angela S. Elleman
Chief, § 2255 Unit
Indiana Federal Community Defenders
111 Monument Circle, Suite 3200
Indianapolis, IN 46204
Phone: 317-383-3520
E-Mail: angie_elleman@fd.org

## CERTIFICATE OF COMPLIANCE

1.  This reply complies with the type-volume limit of Fed. R. App. P. 21(d)(l) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this petition contains 4,120 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font in Times New Roman type style.

Dated: July 16, 2025

/s/ Jill E.M. HaLevi

/s/ Angela S. Elleman
Attorneys for Defendant-Appellant
**Dylann Roof**

16